# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| FIELDWOOD ENERGY III LLC, et. al. | § § | Case No. 20-33948 (MI) |
| Post-Effective Date Debtors. | § § § § § | (Jointly Administered) |
| ZURICH AMERICAN INSURANCE COMPANY, HCC INTERNATIONAL INSURANCE COMPANY PLC, PHILADELPHIA INDEMNITY INSURANCE COMPANY and EVEREST REINSURANCE COMPANY, | § § § § § § § § | Adversary No. 23-03137 |
| *Plaintiffs*, v. | § § § § | |
| APACHE CORPORATION, *Defendant*. | § § § | |

**EVEREST AND PHILADELPHIA'S OPPOSITION, AND CROSS-MOTION FOR RECONSIDERATION AND OTHER RELIEF, TO APACHE'S MOTION FOR LEAVE TO PURSUE PENDING COUNTERCLAIMS AGAINST <u>EVEREST AND PHILADELPHIA</u>**
(Relates to Dkt. No. 73)

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ no later than February 19, 2024. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk no later than February 19, 2024. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Everest Reinsurance Company ("Everest") and Philadelphia Indemnity Insurance Company ("Philadelphia") (Everest and Philadelphia collectively referred to as "E&P") file this *Opposition, and Cross-Motion for Reconsideration and Other Relief, in Response to Apache Corporation's ("Apache") Motion for Leave to Pursue Pending Counterclaims against Everest and Philadelphia (the "Motion for Leave")*. In support, E&P respectfully state as follows:

## PRELIMINARY STATEMENT

Apache's Motion for Leave brings into focus the practical impact of the Court's bench ruling on October 24, 2023 (the "Bench Ruling"), thus providing an opportunity to clarify that ruling and pave a path forward to determining the correct forum for resolution of the post-Effective Date disputes between Apache, E&P and the other sureties. Indeed, the introduction of sanctions and finding of a gross violation by the Sureties of the Plan Injunction is an unnecessary distraction from the merits of this dispute, which deals with complicated and important issues of contract, surety and oil and gas law.

The Bench Ruling is incorrect because the Plan Injunction only applies to "Claims," and the Sureties' State Court Petition[1] did not pursue any "Claims" as that term is defined in the Plan. The purpose of the Plan Injunction, just like any discharge injunction, was to prohibit creditors from attempting to collect on debts owed by the debtors that were discharged in the bankruptcy. *See* 11 U.S.C. § 524(a). That is the reason for the definition of "Claim" in the Plan. The Sureties' pursuit of their causes of action in the State Court Petition did not seek to collect on any debts that were discharged in the bankruptcy. E&P, with the support of the other sureties, believe that the extension by the Court of the Plan Injunction beyond "Claims" to apply to the State Court Petition,

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in prior motion papers and pleadings.

which involved a dispute between non-debtor parties, was improper and should be reversed. To the extent the Court does not reverse the Bench Ruling, then E&P respectfully request a written decision articulating the "Claim" that the Sureties wrongfully pursued in the State Court Petition so that the issue can be addressed on appeal.

If the Court does not reconsider the Bench Ruling, it would have to mean that Apache has similarly committed violations of the Plan Injunction, thus giving rise to sanctions against Apache. Apache has a pending Proof of Claim against the Debtors for Decommissioning Obligations that was filed in the main bankruptcy case. Without first obtaining relief from the Plan Injunction, Apache filed two iterations of its counterclaim, both of which sought to recover under the Payment Bonds for Decommissioning Obligations. The resolution of Apache's counterclaims will have an effect on its Claim against the Debtors per the apparent rationale set forth in the Bench Ruling. For purposes of the Plan Injunction, there is no difference between the causes of action by the Sureties in the State Court Petition which seek a discharge of the bonds covering the Decommissioning Obligations and Apache's counterclaim which seeks reimbursement from P&E for the Decommissioning Obligations. These are two sides of the same coin.

Moreover, in the Bench Ruling, the Court ruled that this lawsuit by the Sureties is void, as if it never occurred. Therefore, in the event that the Court does not reverse that decision, Apache has no pending counterclaims to pursue, warranting a denial of the relief requested by Apache.

In reality, E&P believe that the Plan Injunction was not intended to prevent Apache from pursuing its claims under the Payment Bonds in an appropriate forum (or to prevent the Sureties from seeking a determination of their liability under the Payment Bonds in an appropriate forum). That result is supported by the language of the Plan Documents. The likelihood that Apache's counterclaims will be deemed not subject to the Plan Injunction demonstrates that the Bench

Ruling requires correction. The absence of such correction would bring about an illogical outcome of the Sureties being unable to enforce their rights under the Plan, but Apache being able to enforce its rights under the Plan. Alternatively, the Court may decline to assess sanctions against either party and allow the disputes between E&P, the other sureties and Apache to proceed in the appropriate forum. However, to allow Apache to make demands on the bonds, draws on the letters of credit and to file and pursue its claims through legal action against the Sureties while simultaneously stripping the Sureties of the right to have their obligations determined in the appropriate forum would be an inequitable and inappropriate outcome to these proceedings.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) states as follows:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Court's oral ruling finding that the Sureties violated the Plan Injunction constituted an interlocutory order, and the Court may reconsider the Order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Jackson v. Roach*, 364 F. App'x 138, 139 (5th Cir. 2010) (ruling on a motion to reconsider under Fed. R. Civ. P. 54(b)); *see also* Fed. R. Bankr. P. 7054(a) (applying Fed. R. Civ. P. 54(a)-(c) to adversary proceedings). In *In re Briar Bldg. Houston LLC*, 645 B.R. 896, 903-04 (Bankr. S.D. Tex. 2022), the court stated as follows:

> Although there is no specific provision for a motion to reconsider under the Federal Rules of Civil Procedure, motions for reconsideration are primarily brought under either Rule 54(b) or Rule 59(e). Whereas Rule 59(e) applies only to final judgments, and does not permit consideration of arguments that could have been raised previously, Rule 54(b) applies to interlocutory judgments and permits a district court to reconsider and reverse its decision for any reason. Rule 54(b)'s

approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.

## ARGUMENT

I. **Under the Bench Ruling, Apache Has Already Committed Multiple Gross Violations of the Plan Injunction**

To the extent that the Bench Ruling is not reversed, the Court should find that Apache committed a gross violation of the Plan Injunction by filing counterclaims against E&P and the other Sureties without leave of this Court.

During the Plan Injunction Hearing, the Court issued the Bench Ruling, which found in pertinent part:

> There is a broad injunction in the plan, and that needs to be read in context of what the whole plan was doing. This is what the plan did, it provided a mechanism for resolving the plugging and abandonment and decommissioning obligations with respect to the wells, and the sureties were at the heart of that. Their claim against GOM Shelf arises out of whether they fund or don't fund amounts that are demanded under the bond. If they don't fund, then they don't have a claim they can collect. If they do fund, they may have a claim that they collect, assuming that Apache is paid in full. Those are direct or indirect effects on GOM Shelf. There is just no question about that. It -- some of them may be harmful, some of them may be helpful, but they are direct or indirect effects.

As set forth herein, E&P believe that the Plan Injunction should not have been applied to the State Court Petition because there is no "Claim," as that term is defined in the Plan, that the Sureties pursued in contravention of the Plan Injunction.

However, if the basis for the Court's ruling is that the Debtors' obligation to the Sureties will be either greater or smaller depending on the outcome of the dispute with Apache, then that reasoning must apply with equal force to Apache's actions, warranting a finding that Apache has also violated the Plan Injunction and is subject to sanctions. Apache filed a Proof of Claim relating

to the Debtors' obligations to Apache under the Decommissioning Agreement. That proof of claim provides, in pertinent part:

> Pursuant to the Decommissioning Agreement … FWE is obligated to perform certain plugging and abandonment and other related decommissioning work (the "Decommissioning Obligations") with respect to properties acquired from the Apache Parties pursuant to the PSA…To the extent Apache is required to perform the Decommissioning Obligations under applicable law or contract, FWE is obligated to reimburse Apache for costs and expenses incurred with Apache's performance of such Decommissioning Obligations in accordance with the Decommissioning Agreement. FWE's reimbursement obligations to Apache under the Decommissioning Agreement are supported by letters of credit and surety bonds in favor of APA, and by cash held by the Fieldwood Decommissioning Trust A ("Trust A").

Apache's Proof of Claim defines "Decommissioning Security" and describes when it may become available to Apache.

> The "Decommissioning Security" means any security obtained, provided, or pledged in connection with the Decommissioning Agreement, including the funds available from Trust A, the letters of credit, and the bonds from time to time outstanding pursuant to the Decommissioning Agreement … Apache has the ability draw on the Decommissioning Security for reimbursement of amounts Apache or an Apache Party, as applicable, may spend in performing Decommissioning Obligations the FWE Parties fail to perform under the Decommissioning Agreement.

Under date of July 24, 2023, more than a month after the Sureties filed the State Court Petition, Apache filed its "Original Answer and Counterclaim" (the "Original Counterclaim"). In the Original Counterclaim, Apache sought, among other things, a declaration that "Apache has the right to make draw requests under the Philadelphia and Everest bonds for government-mandated decommissioning expenses" and a declaration that "Zurich and HCCI do not have rights to interfere with the Deutsche Bank Letters of Credit." Apache did not have leave of this Court to assert the Original Counterclaim despite the fact that, if the State Court granted the relief sought in the Original Counterclaim, Apache's "Claim" against the Debtors would be affected. On

August 14, 2023, nearly two months after the Sureties filed the State Court Petition, Apache filed its First Amended Counterclaim (the "Amended Counterclaim"), wherein Apache sought $148 million in damages relating to an alleged breach by P&E of their "obligations under the bonds." Apache did not have leave of this Court to assert the Amended Counterclaim despite the fact that, if granted the relief it sought in the Amended Counterclaim, Apache's "Claim" against the Debtors would be affected. In other words, the Bench Ruling, to the extent it is not reversed, applies with equal force to Apache's counterclaims, and Apache therefore grossly violated the Plan Injunction if Section 10.6 is to be applied in the manner it was applied against the Sureties.

## II. If the Bench Ruling is Not Reversed, Apache has No Pending Counterclaims to Pursue

In issuing the Bench Ruling, this Court held that the Sureties had violated the Plan Injunction and that "[t]he lawsuit is void, as if it never occurred, because it violated the Plan Injunction." (Injunction Hearing Transcript, Dkt. No. 69-2, 125:16-18).

Therefore, Apache has no pending counterclaims to pursue. If Apache wishes to proceed against Everest and Philadelphia, and if the Court grants Apache relief from the Plan Injunction, then Apache will be required to file a new action.

## III. If Apache is Permitted to Proceed on its Claims, then the Sureties should Likewise be Permitted to Proceed on Their Claims

In issuing the Bench Ruling, the Court held:

> There may be arguments [by the sureties] that there are defenses to these things. That isn't the question. If there are defenses to what the sureties are alleging or if the sureties are correct that they should be absolved of liability, that is a substantive issue that will be decided another time, if it ever gets filed correctly. But the issue of whether it invokes the injunction. This is not one of those things that is a close call when you look at this in context. This should not have occurred.

(Injunction Hearing Transcript, Dkt. No. 69-2, 124:24-125:4).

Although E&P dispute that the Plan Injunction precluded the Sureties from filing the State Court Action, to the extent the Court permits Apache to proceed on its claims against the Sureties, the Sureties should likewise be permitted to proceed on their claims against Apache and to assert defenses to Apache's claims.

**IV.     The Court Should Reconsider the Bench Ruling Which Held that the Sureties Violated the Plan Injunction**

In the Sureties' State Court Petition, the Sureties asserted the following causes of action:

> Count 1 – Apache's Post-Effective Date Tortious Interference with the Sureties' Bonds and Decommissioning Agreement
>
> Count 2 – Declaratory Judgment that Apache Cannot Draw on Decommissioning Security for "Maintenance and Monitoring" Expenses
>
> Count 3 – Declaratory Judgment that Apache Impaired the Sureties' Collateral by Improperly Drawing on Trust A for "Maintenance and Monitoring" Expenses
>
> Count 4 – Declaratory Judgment that Apache's Post-Effective Date Conduct Discharged the Sureties
>
> Count 5 - Declaratory Judgment that Apache's Post-Effective Date Conduct Impaired the Sureties' Rights Under the Bonds and the Sureties are Entitled to a Pro-Tanto Discharge
>
> Count 6 – Declaratory Judgment that Apache's Post-Effective Date Conduct Violated the Terms of the Parties' Post-Effective Date Agreements

In short, the causes of action in the State Court Petition are between the Sureties and non-Debtor Apache, and relate to post-Effective Date conduct, primarily centering on the acceleration of the erosion of Trust A through causing GOM Shelf to prematurely issue default letters to BOEM (after the Effective Date of the Plan) and by improperly drawing on Trust A for "maintenance and monitoring" expenses.

The Plan Injunction only applies to "Claims" (i.e., the Plan enjoined creditors from pursuing claims against the Debtors that were discharged in the bankruptcy). Specifically, the Plan Injunction states that:

> Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, **all Persons who have held, hold, or may hold**

> ***Claims or Interests, and other parties in interest***, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, ***are, with respect to any such Claim or Interest***, ***permanently enjoined*** after the entry of the Confirmation Order ***from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit***, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) ***against or affecting, directly or indirectly***, a Debtor, a Post-Effective Date Debtor, or an Estate ***or the property of any of the foregoing***, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; ***provided, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan***.

(Bankr. Dkt. No. 2008, Eighth Amended Plan of Reorganization, Section 10.6) (emphasis added).

"Claim", as defined in the Plan, "means a 'claim,' as defined in section 101(5) of the Bankruptcy Code, **against any Debtor**." *Id.* (emphasis added). Section 101(5) of the Bankruptcy Code defines "claim" as:

(A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) Right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced

11 U.S.C. 101(5).

The Sureties' claims in the State Court Petition are not "Claims" against any Debtor. They are claims against Apache, a non-Debtor.

If the Court still maintains that the proscriptive parts of the Plan Injunction set forth in the first clause of Section 10.6 were violated by the Sureties, then the Bench Ruling should still be modified due to the carve-outs in Section 10.6.  Apache in fact relies upon the carveouts to argue that its claims under the Payment Bond are excepted from the Plan Injunction.  That Apache is arguing that its claims under the Payment Bond (even after the Bench Ruling) are not subject to the Plan Injunction is compelling, if not conclusive, proof that the Sureties had a good faith basis for filing the State Court Petition and that the award of sanctions is not warranted.

In the Motion for Leave, Apache relies upon that part of Section 10.6 which states: "nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims … from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan."  Apache further argues that "the settlement outlined by the Apache-Surety Term Sheet and embodied in the SSPA created a go-forward relationship in which the Sureties (including Everest and Philadelphia) would keep their security (e.g., the Payment Bonds) in place in exchange for the right, under certain conditions, to receive premium payments from GOM Shelf and, only once Apache was 'Paid in Full' (as defined in the SSPA) to be subrogated to Apache's lien rights with respect to the Sureties' reimbursement claims against GOM Shelf."

The Plan Documents demonstrate that after the Effective Date, Apache still had the ability enforce its rights under the Payment Bonds, with its rights thereunder to be determined by the terms of the bonds and the Decommissioning Agreement and applicable law, and as informed by post-Effective Date conduct.  Similarly, after the Effective Date, the Plan Documents demonstrate that the Sureties' rights under the bonds and letters of credit for post-Effective Date conduct were preserved.  The Apache Term Sheet, which was approved by the Confirmation Order at paragraph 95, states that nothing in the Apache Term Sheet: "will release any claims of the parties hereto that

arise post-Effective Date, including the rights of the Apache Sureties under the Apache Surety Bonds and Letters of Credit."

In the context of the exception to Section 10.6, Apache is seeking to exercise its rights under and/or to obtain the benefits of the Plan by asserting the counterclaims against E&P. Similarly, the Sureties, in filing the State Court Petition, were seeking to obtain the benefit of that part of the Plan that preserved "the rights of the Apache Sureties under the Apache Surety Bonds" with respect to claims that arose post-Effective Date, and therefore the State Court Petition was excepted from the Plan Injunction.

Lastly, perhaps the simplest way for the Court to allow the parties to proceed to resolve their dispute is pursuant to the SSPA. In issuing the Bench Ruling, the Court stated: "If [the Sureties] don't fund, then they don't have a claim they can collect. If they do fund, they may have a claim that they collect, **assuming that Apache is paid in full**." (emphasis added). The emphasized "assuming that Apache is paid in full" part of the Bench Ruling demonstrates that the Court was considering the Sureties' potential claims under the SSPA. This is because the Sureties' Proofs of Claim for pre-petition claims are dealt with in Paragraph 96 of the Confirmation Order and are deemed General Unsecured Claims in Class 6B, without a condition that Apache first be paid in full. The condition that Apache first be paid in full is only set forth in the Apache Term Sheet and then later in the SSPA. This is highly relevant to the issue of the Sureties not violating the Plan Injunction because the SSPA expressly states: "ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY RELATED DOCUMENT SHALL BE BROUGHT *IN THE STATE* OR FEDERAL COURTS OF HARRIS COUNTY." (uppercase in original; emphasis added). Accordingly, the Sureties had the right under the SSPA

to file the State Court Petition in State Court and therefore could not have violated the Plan Injunction.

### V. The Plan Injunction, Just like Any Discharge Injunction, is to Prohibit Creditors from Attempting to Collect on Debts that have been Discharged in Bankruptcy

The Plan Injunction here, just like any discharge injunction, is to prohibit creditors from attempting to collect on debts that have been discharged in the bankruptcy. *See* 11 U.S.C. § 524(a). That is the reason that the Plan Injunction, as a gating mechanism, uses the term "Claim," with a cross-referenced definition to section 101(5) of the Bankruptcy Code. Unless a creditor is wrongfully pursuing a "Claim," the Plan Injunction <u>does not</u> apply by its own, explicit language.

As set forth above, none of the Sureties' causes of action in the State Court Petition seek to collect on a debt that was discharged in the bankruptcy.

### VI. The Sureties Cannot be Sanctioned for Violating the Plan Injunction Based upon the "Context" of the Plan

At the Injunction Hearing on October 24, 2023, the Court stated as follows:

> There is a broad injunction in the plan, and that needs to be read in context of what the whole plan was doing. This is what the plan did, it provided a mechanism for resolving the plugging and abandonment and decommissioning obligations with respect to the wells, and the sureties were at the heart of that.
>
> . . .
>
> But the issue is whether it invokes the injunction. This is not one of those things that is a close call when you look at this in context. This should not have occurred.

(Injunction Hearing Transcript, Dkt. No. 69-2, 124:5-10, 125:5-7).

First, E&P disagree with the "context" that the Court appears to be ascribing to the Plan. The "context" is that the Sureties settled their pre-petition claims with Apache in exchange for, among other things: (1) premiums to be paid by GOM Shelf, (2) assumption of the Decommissioning Agreement by GOM Shelf, with the obligation, as primary obligor, to

decommission the Legacy Apache Assets, (3) a share of the benefit to be derived from all the valuable, producing leases that the Debtors provided to Apache under the Plan, and (4) a preservation of the Sureties' rights against Apache for post-Effective Date conduct. In contravention of that settlement, approximately eleven (11) days after the Effective Date, Apache caused GOM Shelf to voluntarily default on numerous leases and other obligations and Apache immediately began drawing tens of millions of dollars a month from Trust A and the bonds for (1) maintenance and monitoring expenses (which are not properly recoverable under Trust A or the bonds), and (2) decommissioning costs.  The Sureties believe that Apache's goal was to deplete Trust A and the bonds as soon as possible: (1) to derive for itself all the value from the oil and gas leases transferred to GOM Shelf, and (2) to ensure that GOM Shelf never had more than $20,000,000 in free cash flow so the Sureties would never receive any Incremental Premium Payment as that term is defined in the SSPA.  (Subrogation, Subordination and Payment Agreement, Dkt. No. 29-3).

Second, and perhaps more importantly, the Court cannot rewrite the plain language of the Plan Injunction based upon the "context" in which the Plan was effected and/or the "context" in which Apache and the Sureties settled their dispute.

### VII. The Bonds are Not Property of the Estate and the Court Should Not Enjoin the Sureties from Pursuing their Causes of Action Against Non-Debtor Apache in State Court

The Sureties' bonds are not property of the estate and the Debtors have no interest in the bonds. *O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F. 2d 1171, 1177 (9th Cir. 1989) ("[T]he 'overwhelming weight of authority,' under both the Bankruptcy Act and Code holds that a contractor [principal] has no property interest in a surety bond issued by a third-party [surety] to guarantee the contractor's performance on its commercial or personal services contracts."); *see also Ohio v. Mansfield Tire and Rubber Co. (In re Mansfield Tire and Rubber Co.)*, 660 F. 2d

1108, 1115 (6th Cir. 1981) (the debtor could not claim any legal or equitable interest in the surety bonds); *In re Petroleum Piping Contractors, Inc.*, 211 B.R. 290, 312 (Bankr. N.D. Ind. 1997) (surety bonds are not property of debtor's estate and the automatic stay does not apply to any proceeding by supplier to enforce its claims against sureties); *McLean Trucking Company v. Dept. of Industrial Relations (In re McLean Trucking Co.)*, 74 B.R. 820, 826 (Bankr. W.D.N.C. 1987) (surety bond is not property of the estate); *Fintel v. Oregon (In re Fintel)*, 10 B.R. 50, 51 (Bankr. D. Or. 1981) (surety bond was not property of a bankrupt debtor's estate).

Not only does the Plan Injunction, by its plain language (i.e., the term "Claim"), not extend to the surety bonds, but the Court would have had no jurisdiction to extend the Plan Injunction to the surety bonds, which are not property of the Debtors' estate. This Court cannot enjoin the Sureties from asserting their rights against non-debtor Apache.

### VIII. The Plan Injunction Does Not Apply to Objections to Confirmation

The Plan Injunction here, just like any discharge injunction, is to prohibit creditors from attempting to collect on debts that have been discharged in the bankruptcy. *See* 11 U.S.C. § 524(a). The Plan Injunction does not apply to arguments made in objection to confirmation. Apache, and the Court, have suggested previously that the Sureties, by virtue of their filing of the State Court Petition, are simply seeking to rehash arguments made previously in opposition to Plan confirmation. This is not accurate.

It is true that during the pendency of the bankruptcy, the Sureties advised Apache that its support of the Plan could have materially altered the Sureties' obligation under the Decommissioning Security and also created other defenses relating to the pre-petition relationship between Apache and Fieldwood. The Sureties acknowledge that those pre-confirmation arguments were settled under the Apache Term Sheet and released at Confirmation. However, to find that the State Court Petition is a rehash of those arguments would ignore the language of the

Apache Term Sheet (approved in Paragraph 95 of the Confirmation Order and attached thereto as Exhibit B) that expressly preserves the Sureties' rights relating to post-Effective Date acts. Such a finding would further ignore the fact that the Sureties seek to assert causes of action relating to Apache's role in the issuance of the default letters to BOEM which occurred after the Effective Date; Apache's role in drawing upon Trust A which occurred after the Effective Date; and Apache's interaction with GOM Shelf, which was not even vested with the Legacy Apache Assets until after the Effective Date and which did not assume the Decommissioning Agreement until after the Effective Date.

### IX. To the Extent the Court Does Not Reconsider the Bench Ruling, E&P Respectfully Request a Written Decision from the Court Articulating what "Claim" the Sureties are Wrongly Pursuing

E&P are hopeful that the Court will reverse the Bench Ruling and permit the Sureties and Apache to proceed with their claims against each other. To the extent the Court does not reverse itself, E&P respectfully request that the Court issue a written decision specifically identifying the "Claim" that the Sureties are wrongly pursuing, so that the issue may be addressed on appeal.

### CONCLUSION

E&P respectfully request that the Court (a) deny Apache's motion, or in the alternative (b) permit the Sureties and Apache to pursue their claims against each other, and (c) reverse the Bench Ruling that the Sureties violated the Plan Injunction, and (d) grant any such further relief that the Court deems just and proper.

Dated: February 9, 2024

Respectfully submitted,

*/s/ Darren Grzyb*
Darren Grzyb (NJ Bar No. 016142005)
*Admitted Pro Hac Vice*

dgrzyb@csglaw.com
Jase A. Brown (NJ Bar No. 225202018)
*Admitted Pro Hac Vice*
jbrown@csglaw.com
**CHIESA, SHAHINIAN & GIANTOMASI, PC**
105 Eisenhower Parkway
Roseland, New Jersey 07068
973.325.1500 / 973.530.2277 (Fax)

**ATTORNEYS FOR PLAINTIFF EVEREST REINSURANCE COMPANY**

*/s/ Jeff Price*
Michael E. Collins (TX Bar No. 24029006)
mcollins@manierherod.com
Jeff Price (TN Bar No. 019550)
*Admitted Pro Hac Vice*
jprice@manierherod.com
Scott Williams (TN Bar No. 021757)
*Admitted Pro Hac Vice*
swilliams@manierherod.com
**MANIER & HEROD, PC**
1201 Demonbreun St, Suite 900
Nashville, Tennessee 37203
615.244.0300 / 615.242.4203 (Fax)

**ATTORNEYS FOR PLAINTIFF PHILADELPHIA INDEMNITY INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I certify that on February 9, 2024, a true and correct copy of the above pleading was served electronically via the Court's electronic case filing system on all parties registered to receive such service.

*/s/ Darren Grzyb*

Darren Grzyb