United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 12, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33948 |
| FIELDWOOD ENERGY LLC, *et al.*, | § | |
| | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| ZURICH AMERICAN INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3137 |
| | § | |
| APACHE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

This adversary proceeding involves a removed state court action in which the Plaintiffs (the "Sureties") collaterally attacked portions of Fieldwood Energy LLC's Chapter 11 plan of reorganization. The Sureties had settled their claims as part of the confirmation process. The confirmation order enjoined the actions that the Sureties took when they filed their state-court lawsuit. The confirmation order is now final and non-appealable. The Sureties willfully violated it.

The confirmed plan is complex. But its complexity was well understood by the parties. Importantly, the United States played an integral role in the confirmation process. As the ultimate beneficiary of the decommissioning activities under the confirmed plan, the United States was able to assure that decommissioning activities were to be fully funded. Unlike some plans that seek to limit obligations to the

United States, the confirmed plan was designed to assure that decommissioning was successfully completed.

Prior to the petition date, Apache, a prior interest owner in certain Fieldwood oil and gas assets, obtained letters of credit and surety bonds in its favor to assure Fieldwood's obligation to fund government decommissioning obligations under the terms of a decommissioning agreement between Apache and Fieldwood. During the pendency of Fieldwood's bankruptcy cases, the Sureties heavily contested the confirmation of Fieldwood's plan of reorganization. The objections centered on the issue that Apache would inevitably draw on those surety bonds and letters of credit. The arguments made in those objections, as well as any pre-effective date defenses to Apache's future draws under the bonds, were waived and released as part of a settlement reached between Fieldwood, Apache, and the Sureties. The settlement is incorporated into Fieldwood's plan and the Court's confirmation order.

On June 21, 2023, the Sureties sued Apache in Texas state court after Apache began drawing funds pursuant to a trust established to fund decommissioning obligations. The lawsuit sought to discharge the Sureties of their obligations under the bonds and letters of credit and prevent Apache from drawing on them. The Sureties sought and lost a heavily contested temporary injunction in state court. Having prevailed in state court, Apache removed the lawsuit to this Court and moved to enforce the plan and confirmation order. This Court held the state court lawsuit void as a violation of the plan injunction.

Apache moves for leave to assert its counterclaims against the Sureties. In response, the Sureties move for reconsideration of the Court's order voiding the state court lawsuit. Apache also moves for attorneys' fees as sanctions against the Sureties for filing the lawsuit. Apache's motion for leave is granted. It is entitled to attorneys' fees. The Sureties' motion for reconsideration is denied.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Prior to the petition date, Fieldwood Energy LLC was one of the largest independent energy exploration and production companies operating in the Gulf of Mexico.  In 2013, Apache Corporation and its related entities entered into a purchase and sale agreement with Fieldwood.  Under the agreement, Fieldwood purchased from Apache certain assets to be used for its energy exploration and production operations.

Fieldwood and Apache also entered into a decommissioning agreement, under which Fieldwood was obligated to decommission the purchased assets.  ECF No. 52-17.  The agreement provides that if Apache incurs costs or expenses arising out of the performance of governmentally required decommissioning obligations, Apache is entitled to reimbursement by Fieldwood for those costs and expenses. ECF No. 52-17 at 15.  The agreement further provides that if Fieldwood fails to provide reimbursement, Apache shall

> be entitled to any and all rights and remedies at Law or under any agreement or contract, including specific performance, drawings under any Letter of Credit, reimbursement from the Trust A Cash, reimbursement from the Trust B Cash for the Reimbursable Amounts . . . or, subject to the terms of the Intercreditor Agreement, rights and remedies under the Security Instruments.

ECF No. 52-17 at 15.

The pre-petition agreement required Fieldwood to provide security to Apache for decommissioning costs by obtaining letters of credit in favor of Apache in an amount of approximately $500 million.  ECF No. 52-17 at 16.  The agreement was subsequently amended to permit a portion of this amount to be provided by surety bonds issued in favor of Apache.  ECF No. 52-4 at 4.

## A.      The Decommissioning Security

### (1)      *The Deutsche Bank Letters of Credit*

On November 9, 2015, Fieldwood entered into an agreement with Deutsche Bank, under which Deutsche Bank would issue letters of credit in Apache's favor.  The agreement conditioned the issuance of the letters of credit on Fieldwood obtaining surety bonds to collateralize Fieldwood's obligations to repay Deutsche Bank for any draws under the letters of credit.   That same day, Fieldwood obtained from Zurich American Insurance Company four surety bonds issued in favor of Deutsche Bank with an aggregate penal sum of $300 million.  ECF Nos. 79-7, 79-8, 79-9, 79-10.  On November 12, 2015, Deutsche Bank issued four standby letters of credit in Apache's favor with an aggregate sum of $300 million.  ECF Nos. 79-7 at 3; 79-8 at 3; 79-9 at 3; 79-10 at 3.

In January 2016, Fieldwood entered into an agreement with Deutsche Bank for the issuance of additional letter of credits with an aggregate sum of $50,000,000 in Apache's favor.   Pursuant to the agreement, Deutsche Bank issued a single $50,000,000 letter of credit in Apache's favor.   Deutsche Bank also entered into a Participation Agreement with HCC International Insurance Company ("HCCI") to provide additional security for the $50,000,000 letter of credit.  ECF No. 79-11 at 4.  Under the agreement, HCCI purchased a 100% participation interest in any letters of credit issued under the January 2016 agreement, under which HCCI agreed to fully reimburse Deutsche Bank for any payment Fieldwood failed to make to Deutsche Bank if the letters of credit were drawn.  ECF No. 79-11 at 6.

The Zurich bonds contain the following provision, reinforcing that the Surety's obligation was direct and would not be impaired by a Fieldwood default:

> The Bond constitutes the Surety's primary, absolute and independent obligation to make payment to [Deutsche Bank] in accordance with the terms hereof, under any and all circumstances, including without limitation, due to the

> lack of validity, legality, or enforceability of the Agreement, the Reimbursement Agreement or the Security and irrespective of all objections, exceptions, set-offs, counterclaims or defenses of any kind from the Surety, Fieldwood, or other third parties.

ECF Nos. 79-7 at 4; 79-8 at 4; 79-9 at 4; 79-10 at 4.

The HCCI Participation Agreement also contains the following waiver provision:

> [HCCI] acknowledges and agrees that its obligations under Section 3 to pay its Participation portion . . . (c) shall not be affected in any way by any circumstance occurring after the date of the Agreement, including, without limitation . . . (vi) any other circumstance of any kind that otherwise would discharge the surety or be a defense to its obligations.

ECF No. 79-11 at 7.

### (2)    The Everest and Philadelphia Surety Bonds

The decommissioning security also consists of surety bonds issued in Apache's favor by Everest Reinsurance Company and Philadelphia Indemnity Insurance Company.

On August 30, 2018, Everest issued a $75 million surety bond. ECF No. 52-1 at 2. Under the agreement, Apache is entitled to draw on the Everest bond to recover decommissioning costs reimbursable under its decommissioning agreement with Fieldwood. ECF No. 52-1 at 3. Prior to the issuance of the bond, Fieldwood entered into an agreement with Everest, under which it agreed to indemnify Everest for any and all losses incurred in connection with the Everest bond. The obligations were secured by a security interest in certain Fieldwood collateral.

On September 27, 2018, Philadelphia issued a $73 million surety bond with terms similar to the Everest bond. ECF No. 52-2 at 2. Under the agreement, Apache is similarly entitled to draw on the bond for

reimbursable decommissioning costs.  ECF No. 52-2 at 3.  The bond is also coupled with an agreement under which Fieldwood agreed to indemnify Philadelphia for any losses incurred in connection with the bond.

Under both bonds, Philadelphia and Everest agreed to the following provision, cementing the independence of the Sureties' obligations to Apache:

> The obligations of the Surety under this Bond shall be unconditional and irrevocable and [Apache's] Drawing Request shall be accepted by the Surety as conclusive proof that the amount demanded is due and payable by the Surety to [Apache] under this Bond.  The Surety, whether in its capacity as surety or subrogee of the Principal, waives, to the fullest extent permitted by applicable law, each and every right which it may have to contest [Apache's] computation or payment of the obligations or [Apache's] application of the bond proceeds to the obligations.  The Surety waives any and all defenses or counterclaims related to the Surety's obligations under this Bond and expressly agrees that no genuine issue of fact exists that would prevent or preclude Surety's obligations to comply with any Draw Request.

> Surety's obligations under this Bond are not subject to any condition or qualification except as expressly set forth herein and are not contingent on (i) the ability of the Surety to perfect any lien or security intertest on any asset or property of the Principal or any other person; or (ii) the Surety's ability to obtain indemnification from the Principal or any other person; or (iii) any other circumstances which might otherwise constitute a legal or equitable discharge or defense for Surety.

ECF Nos. 52-1 at 5; 52-2 at 5.

## II.   PROCEDURAL BACKGROUND

On August 3 and 4, 2020, the Fieldwood entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.   Case No. 20-33948.  Fieldwood's Chapter 11 plan of reorganization was confirmed on June 25, 2021.  Case No. 20-33948, ECF No. 1751.  The plan had an effective date of August 27, 2021.  Case No. 20-33948, ECF No. 2016 at 1.

Prior to entry of the confirmation order, Fieldwood initiated an adversary proceeding after certain of the Sureties[1] sent correspondence to Apache indicating their position that their obligation to honor the surety bonds had been discharged.  Case No. 21-03418, ECF No. 41.  The complaint sought a declaration that the "confirmation of the Plan, and the effectiveness of the transactions contemplated therein, including under the Apache Definitive Documents, will not discharge the Sureties' obligations under the Surety Bonds or impair Apache's ability to draw on the Surety Bonds in the future."  Case No. 21-03418, ECF No. 41 at 11–12.

The adversary proceeding was voluntarily dismissed as a result of a settlement reached between Fieldwood, Apache, and the Sureties. Case No. 21-03418, ECF No. 41.  The settlement is embodied in an Apache-Surety Term Sheet and a Subordination, Subrogation and Payment Agreement (the "SSPA").  ECF No. 29-3; Case No. 20-33948, ECF No. 1751-2.  These agreements were incorporated into Fieldwood's plan and the Court's confirmation order.  Case No. 20-33948, ECF No. 1751-2 at 4–5.

### A.   The Sureties' Plan Objections

The Sureties heavily contested the confirmation of Fieldwood's plan of reorganization.  They each filed plan objections which focused, among other issues, on the following: (1) the feasibility of Fieldwood's

---

[1] Zurich, HCCI, Everest, and Philadelphia are collectively referred to as the "Sureties."

plan due to Fieldwood's significant decommissioning obligations, and (2) the unfair treatment of Apache and the improper control Apache would obtain over GOM Shelf, a Fieldwood entity, under the plan and FWE I[2] LLC agreement.  ECF Nos. 52-7, 52-8, 52-16, 52-22.

The Sureties objected to Fieldwood's plan on the basis that the Plan was not feasible because Fieldwood's projected cash flows could not meet its decommissioning obligations.  They argued that, because of these insufficient cash flows, Fieldwood would inevitably breach its decommissioning obligations, shifting those obligations to Apache under the terms of the decommissioning agreement.  ECF Nos. 52-7 at 14; 52-8 at 10; 52-16 at 7–8; 52-22 at 8–12, 34.  The objections further argued that the decommissioning structure would likely result in Apache exhausting the funds contained in Trust A,[3] thereby forcing Apache to draw on the surety bonds as the source to fund Fieldwood's decommissioning obligations.  ECF Nos. 52-7 at 13; 52-16 at 7–8, 15–16, 50–51.

The Sureties also objected to the Fieldwood's plan on grounds that the plan and Fieldwood's organizational documents would result in Apache improperly controlling GOM Shelf's operations and management and permit Apache to "arbitrarily force the use of potentially available surety bonds to pay for plugging and abandonment . . . liabilities . . . ."  ECF No. 52-7 at 13.  According to the Sureties, Fieldwood's organizational documents were structured such that Apache's decommissioning obligations were termed a "'loan' and are providing Apache with a significant interest rate . . . granting Apache a security interest in all of the FWE I Assets . . . and permitting Apache to avoid having to make any 'loan' until after all of the Decommissioning Security is exhausted . . . ."  ECF No. 52-22 at 11–12.  The Sureties

---

[2] FWE I is an entity created through the plan to hold Fieldwood assets and obligations. Case No. 20-33948, ECF No. 1742 at 50.

[3] Trust A is a trust established under the decommissioning agreement to hold a certain amount of revenue from Fieldwood's operations as a source of funds for decommissioning obligations.  ECF No. 52-17 at 18–19.

argued that this structure would result in Apache exercising "*de facto* control" over Fieldwood.  ECF No. 52-22 at 11.  And because Apache could exercise this control, according to the Sureties, Apache would "draw down on the Sureties' Bonds and drain the financial resources of the creditors [Fieldwood] is obliged to protect" and "scoop up any remaining value in FWE I after the surety bonds related to FWE I are exhausted."  ECF No. 52-17 at 31, 45–46.

For completeness, the Court notes that the Sureties were allowed to (and, in fact, did) make full arguments to the Bankruptcy Court as prescribed by the Supreme Court in a subsequent opinion.  *Truck Insurance Exchange v. Kaiser Gypsum Co*., 144 S. Ct. 1414 (2024).  The Sureties settled when they could not win on the merits; it was not a standing issue.

### B.    The Plan, Confirmation Order, and the Parties' Settlements

#### (1)    The Surety Confirmation Agreement

The Sureties' plan objections were eventually withdrawn as part of a settlement between Fieldwood, Apache, and the Sureties.  Under the settlement, the parties preserved Apache's rights under the letters of credit and surety bonds and expressly discharged and waived the Sureties' plan objections and "any defense to payment under the bonds and Letters of Credit existing as of the Effective Date."  ECF No. 1751-2 at 5–6.  The settlement is embodied in the Apache-Surety Term Sheet and Subordination, Subrogation and Payment Agreement (the "Surety Confirmation Agreement").

The Surety Confirmation Agreement provided, among other things:

> In connection with the execution of this Term Sheet or promptly thereafter, the Apache Sureties agree to (i) announce to the Bankruptcy Court the terms of this Term Sheet and withdraw any pending objections they have filed

to the Plan; (ii) not file any further objections to the Plan; (iii) support and take all actions reasonably necessary or reasonably requested by the Debtors to support incorporation of this Term Sheet into confirmation of the Plan; and (iv) not support any party in objecting to or opposing the Plan.

The Apache Sureties agree that the Debtors and Apache are permitted to agree to an alternative cure to satisfy the existing defaults under the Decommissioning Agreement. Specifically, the defaults Apache asserts were caused by the Debtors' alleged failure to meet the Required Spend in 2020 and the Audit Claim, both as further detailed in Apache's proofs of claim, may be satisfied by the settlement between the Debtors and Apache contained within the Plan, the Confirmation Order, and this Term Sheet and the Apache Sureties will have no claim that Apache or any other party has impaired the Apache Sureties' subrogation rights or otherwise prejudiced the Apache Sureties' in any respect.

Notwithstanding anything set forth herein to the contrary, each of the Apache Sureties agrees to be a "Releasing Party" bound by the releases set forth in section 10.7 of the Plan. For the avoidance of doubt, any defense to payment under the bonds and Letters of Credit existing as of the Effective Date will be released by the Apache Sureties. Further, nothing herein will release any claims of the parties hereto that arise post-Effective Date, including the rights of the Apache Sureties and Apache under the Apache Surety Bonds and Letters of Credit.

ECF No. 1751-1 at 5–6.

The Surety Confirmation Agreement binds Fieldwood, Apache, and the Sureties and applies to the Deutsche Bank letters of credit, the

Philadelphia bond, and the Everest bond.  ECF No. 29-3 at 1–3.  Under
the Surety Confirmation Agreement, the Sureties would receive post-
confirmation premiums from GOM Shelf until Apache made its first
draw on the decommissioning security.  ECF No. 29-3 at 13.  Once the
decommissioning was complete and Apache was paid in full, the
Sureties would be subrogated to Apache's rights against GOM Shelf for
reimbursement of decommissioning costs under the decommissioning
agreement up to the amount of draws funded by the Sureties.  ECF No.
29-3 at 14.

   The Surety Confirmation Agreement contains limitations on
actions by the Sureties.  It provides:

> Each Junior Creditor[4] agrees that . . . [u]ntil all Senior
> Debt is Paid in Full and the Commitments are terminated
> it will not, without the prior written consent of the Senior
> Creditors[5] . . . (iv) take any action that would, or could
> reasonably be expected to, hinder, in any manner, any
> exercise of remedies under the Senior Documents, it being
> understood that the Junior Creditors' rights to collect the
> FWE I Premium Claims are not limited by this provision
> but are subject to the limitations of Section 2(g) hereof.

ECF No. 29-3 at 14.

### (2)   The Plan and Confirmation Order

   Pursuant to Fieldwood's confirmed plan of reorganization,
Fieldwood's assets and obligations were vested in FWE I, FWE II, and
additional FWE entities.  ECF Nos. 1742 at 50; 1751 at 28–29, 77.  FWE
I and GOM Shelf were formed under the FWE I LLC agreement, which

---

[4] The Surety Confirmation Agreement defines the Junior Creditors as the Sureties.
ECF No. 29-3 at 2, 8.

[5] The Surety Confirmation Agreement defines the Senior Creditors as the Apache
entities.  ECF No. 29-3 at 2, 10.

was approved by the Court's confirmation order. ECF No. 1751 at 15, 36.

Fieldwood's decommissioning obligations were expressly preserved as continuing obligations of FWE I. This preservation includes Apache's rights under the surety bonds and the Deutsche Bank letters of credit. The confirmation order provides:

> Except as otherwise provided in the Plan or this Order with respect to the Released Parties . . . , nothing herein shall affect or be deemed to restrict or limit Apache's, FWE I's, or GOM Shelf LLC's claims for or rights to seek payments or contribution from, and any defenses against, current or prior working interest owners, predecessors, co-owners and/or operators, or from any other parties that are contractually, legally, regulatorily or equitably liable for decommissioning or related obligations with respect to the Legacy Apache Properties and FWE I Assets.
>
> . . .
>
> Upon the Effective Date of the Plan, to the extent the Decommissioning Agreement is an executory contract, it will be assumed, with the consent of the Apache PSA Parties, by the Fieldwood PSA Parties and, upon consummation of the transactions provided for in the Plan of Merger, become the obligations of FWE I. Upon execution of the Apache Definitive Documents, including, without limitation the granting of liens to Apache on the FWE I and GOM Shelf LLC assets contemplated thereunder, the Debtors will be deemed to have cured all defaults existing under the Decommissioning Agreement as of the Effective Date (the "**Apache Cure**") and no third party, including, without limitation, the Apache Sureties, may raise any defense to payment under the Apache Surety Bonds or letters of credit, in each case constituting

> Decommissioning Security, based on the agreement reached between the Debtors and Apache as to the Apache Cure.
>
> . . .
>
> All rights of the Apache PSA Parties with respect to bonds and letters of credit constituting security for decommissioning of the assets held by the GOM Shelf LLC or allocated to and vested in FWI I, including, without limitation, the Decommissioning Security shall be preserved as against such bonding companies and letter of credit issuers in all respects. . . .  For avoidance of doubt, Everest Bond No. ES00001441 in favor of Apache, as obligee, is expressly an Apache Surety Bond and subject to the Apache-Surety Term Sheet.

Case No. 20-33948, ECF No. 1751 at 78–81.

The confirmation order also expressly recognized that the plan does not give Apache any control over FWE I:

> The reorganization of FWE in accordance with the Plan, including the creation of FWE I pursuant to a divisive merger and its formation under the Fieldwood Energy I LLC Agreement, does not give Apache or any of its affiliates control over FWE I in any manner that would be recognized under the Securities Act of 1934, the Bankruptcy Code, or any other applicable law, and none of the terms of the Apache Definitive Documents, including the consent rights granted to Apache thereunder, cause Apache to have any such control over FWE I.

Case No. 20-33948, ECF No. 1752 at 84.

Finally, § 10.6 of the plan contains a broad plan injunction barring the commencement of claims affecting Fieldwood.  The injunction provides:

Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor . . . *provided*, that nothing contained in the Plan shall preclude such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

Case No. 20-33948, ECF No. 1742 at 82–83.

## C.    The Sureties' State Court Lawsuit

On September 8, 2021, GOM Shelf sent a notice to the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement indicating that it was defaulting on its obligations to decommission its offshore leases and pipelines.  ECF No. 52-11 at 3.  In response to the default notice, BSEE issued multiple orders to entities that were either lessees/operators or prior lessees/operators, including Apache, of their obligation to commence

decommissioning of the assets due to GOM Shelf's failure to decommission within the timeframe required under applicable regulations. ECF Nos. 53-7, 53-8, 53-18, 53-19, 53-30.

After receipt of the BSEE orders, Apache began decommissioning activities on the assets and submitted draw requests to Trust A to fund the decommissioning. In violation of the Court's order, on June 21, 2023, the Sureties sued Apache in Harris County State Court seeking damages, declarations that Apache is not entitled to draw upon Trust A and that the Sureties are discharged from their obligations under the decommissioning security, and temporary and permanent injunctions to prevent Apache from drawing upon the Deutsche Bank letters of credit and surety bonds. ECF No. 1-1. The state court lawsuit is a transparent attempt to masquerade matters resolved under Fieldwood's plan and the Court's confirmation order as claims for relief based on post-effective date conduct.[6]

The state court held a multi-day hearing on the temporary injunction and denied the injunction. ECF No. 53-9.

### D. Apache's Motion to Enforce the Plan and Confirmation Order

On July 6, 2023, Apache removed the state court lawsuit to this Court. ECF No. 1. On July 28, 2023, Apache moved to enforce the plan and confirmation order. ECF No. 5. Apache argues that the Sureties' state court lawsuit is a collateral attack on the plan and confirmation order because it raises claims that were expressly discharged. ECF No. 5 at 29–32.

The Court held multiple hearings on the removed lawsuit and motion to enforce, culminating into an evidentiary hearing held on October 24, 2023. ECF No. 59. At the hearing, the Court held that the

---

[6] Claims that arise post-effective date are preserved under the Apache-Surety Term Sheet. ECF 1751-2 at 6 ("[N]othing herein will release any claims of the parties hereto that arise post-Effective Date, including the rights of the Apache Sureties and Apache under the Apache Surety Bonds and Letters of Credit.").

state court lawsuit was a blatant violation of the plan and confirmation order for raising claims that were expressly settled and released. The Court found that the lawsuit was "a gross violation of the plan injunction over which we have subject matter jurisdiction." ECF No. 64 at 124. The Court reasoned:

> There is a broad injunction in the plan, and that needs to be read in the context of what the whole plan was doing. This is what the plan did, it provided a mechanism for resolving the plugging and abandonment and decommissioning obligations with respect to the wells, and the sureties were the heart of that.

> Their claims against GOM Shelf arises out of whether they fund or don't fund the amounts that are demanded under the bond. If they do fund, they may have a claim that they collect, assuming that Apache is paid in full.

> Those are direct or indirect effects on GOM Shelf. There is no question about that.

ECF No. 64 at 124.

The Court declared the state court lawsuit void and permitted Apache to file an application for compensation for the attorneys' fees expended in litigating the case. ECF No. 64 at 125.

Apache filed an application for compensation on November 14, 2023. ECF No. 67. Apache also filed a motion for leave to pursue its counterclaims against the Sureties on January 19, 2024. ECF No. 73. The counterclaim asserts claims for breach and repudiation of the Surety Confirmation Agreement and payment bonds and seeks declaratory judgments regarding Apache's rights under the decommissioning security. ECF No. 24 at 14–17. On February 9, 2024, Everest and Philadelphia filed a motion to reconsider the Court's October 24 oral ruling. ECF No. 75.

On February 21, 2024, the Court held a hearing on the application for compensation, motion for leave, and motion for reconsideration. ECF No. 84. The Court requested additional briefing on the issue of whether a Court may modify a plan injunction under general federal principles and took the pleadings under advisement. ECF No. 87 at 88–89. The parties submitted supplemental briefing. ECF Nos. 89, 90.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

There are three motions pending before the Court: (1) the Sureties' motion for reconsideration of the Court's October 24 oral ruling; (2) Apache's motion for leave to pursue its counterclaims against the Sureties; and (3) Apache's application for compensation for the Sureties' violation of the plan injunction. The Court denies the motion for reconsideration. Apache is permitted to assert its counterclaims and is entitled to attorneys' fees.

## I.    THE SURETIES' MOTION FOR RECONSIDERATION IS DENIED

The Sureties move for reconsideration of the Court's October 24 oral ruling holding that their state court lawsuit violated the injunction contained in § 10.6 of Fieldwood's plan. The motions rests on three principal arguments: (1) that the Sureties' claims in the state court action are not "Claims" that fall under the plan injunction; (2) that the causes of action asserted by the Sureties allege only post-petition conduct not enjoined by the plan injunction; and (3) that the Court does not have jurisdiction to extend the plan injunction to the surety bonds because the bonds are not property of the estate. These arguments fail.

"Although the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, courts address such motions under Rules 54(b) for interlocutory orders, and under Rules 59 and 60 for final judgments." *Lexington Ins. Co. v. ACE Am. Ins. Co.*, 192 F. Supp. 3d 712, 714 (S.D. Tex. 2016). The Sureties' motion seeks to reconsider an oral interlocutory order and is addressed under Rule 54(b). "Rule 54(b) states that 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Id.* Rule 54(b) applies to adversary proceedings through Fed. R. Bankr. P. 7054(a).

"The standard of review for reconsideration of interlocutory orders is 'as justice requires.'" *Lexington Ins. Co.*, 192 F. Supp. At 714 (quoting *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013)). "The standard requires a determination of 'whether reconsideration is necessary under the relevant circumstances.' Underlying a motion for reconsideration is 'the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Contango Operators, Inc.*, 965 F. Supp. 2d at 800). However, the standard "for a Rule 54(b) motion is 'typically held to be less exacting' than the standard for Rule 59(e) motions, and the Court has broad discretion to revise orders under Rule 54(b). . . . Under Rule 54(b), the trial court can reconsider and reverse its decision for any reason it deems sufficient." *Black v. Experian Info. Sols., Inc.*, No. CV H-21-04231, 2022 WL 1809307, at *2 (S.D. Tex. June 2, 2022).

### A.   The Plan Injunction Is Not Limited to the Pursuit of Discharged Claims Against Fieldwood

The Sureties argue that the plan injunction "only applies to Claims (i.e., the Plan enjoined creditors from pursuing claims against the Debtors that were discharged in the bankruptcy)." ECF No. 75 at 8.

They contend that the plan defines a "Claim" as a claim under § 101(5) of the Bankruptcy Code as "against any Debtor."  ECF No. 75 at 9. Accordingly, because a "Claim" is defined as claims against a debtor, the injunction acts as a discharge injunction to "prohibit creditors from attempting to collect on debts that have been discharged in the bankruptcy." ECF No. 75 at 12.  Because the Sureties claims are against non-debtor Apache, the Sureties contend the claims do not fall under an injunction prohibiting claims against Fieldwood for the collection of discharged debt.  ECF No. 75 at 9-10.

Although it is true that Fieldwood's plan defines a "Claim" as a claim under § 101(5) of the Bankruptcy Code,[7] the Sureties extension of this definition to a theory that the plan injunction acts as a simple discharge injunction entirely misses the mark.   The § 10.6 plan injunction, by its plain meaning, does not simply limit collection actions against Fieldwood.  The word "Claim" appears in two relevant places. First, the injunction states that it applies to "all Persons who have held, hold, or may hold Claims."  ECF No. 1742 at 82.  The Sureties do not, and cannot in good faith, dispute that they held claims against Fieldwood.  ECF Nos. 53-22, 53-23, 53-24, 53-25.  Next, the injunction provides that these claimholders are,

> with respect to any such Claim . . . , permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the

---

[7] Case No. 20-33948, ECF No. 1742 at 9.

foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor . . . .

ECF No. 1742 at 82–83.

The Sureties discharge injunction argument is based on the language in the plan injunction stating that it prevents action "with respect to" a claimholder's claim. Courts do not give such a narrow interpretation of the meaning "with respect to." Rather, the phrase is consistently interpreted expansively to be read synonymously with the phrase "related to." *See BMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. CV H-17-2254, 2018 WL 7291425, at *8 (S.D. Tex. Aug. 30, 2018) ("The phrase 'relating to' is synonymous with the phrases 'with respect to,' 'with reference to,' 'in connection with,' and 'associated with.' . . . The language encompasses any disputes that have some 'logical or causal connection' to the agreement or reference the agreement."); *ABMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. CV H-17-2254, 2018 WL 7291425, at *8 (S.D. Tex. Aug. 30, 2018) (same).

The Sureties cannot dispute that their lawsuit related to their claims against Fieldwood. Their claims against Fieldwood are based on their potential subrogation rights contained in the Surety Confirmation Agreement. If Apache draws on the surety bonds and letters of credit and is paid in full for costs expended in decommissioning under its decommissioning agreement with Fieldwood, the Sureties are subrogated to Apache's rights against GOM Shelf for reimbursement of decommissioning costs up to the amount of drawn funds. A lawsuit seeking to discharge the Sureties' duty to fund draws under the bonds and letters of credit, and to prevent Apache from drawing on the bonds and letters of credit, would necessarily relate to their claims against Fieldwood. The state court lawsuit is a suit that would directly impact and may determine the extent of those claims.

Another prerequisite for the application of the plan injunction is that the action affects, "directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing . . . ."

Case No. 20-33948, ECF No. 1742 at 82.   The Court held this requirement met in its oral ruling.   The Sureties do not dispute this finding.

The plan injunction is not limited to actions for the collection of discharged debts against Fieldwood.  Indeed, there would be no need for such an injunction.   The discharge of claims is contained in the Bankruptcy Code itself.  11 U.S.C. § 1141.

## B.      The Lawsuit Violates the Plan Injunction

The Sureties next allege that the lawsuit litigates only non-released post-effective date causes of action.  ECF No. 75 at 14–15.  The Sureties rely on the carveout provision in the plan injunction, which provides that "nothing contained in the Plan shall preclude such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan."  Case No. 20-33948, ECF No. 1742 at 83. The injunction's carveout thus does not foreclose the pursuit of claims that would be consistent with the terms of Fieldwood's plan.

The Surety Confirmation Agreement is incorporated in the plan and confirmation order.  If the Sureties (or Apache) only pursue claims preserved in those documents, then the lawsuit would be consistent with the plan and fall under the injunction carveout.  The Apache-Surety term sheet contains the following provision:

> [T]he Apache Sureties agree to (i) announce to the Bankruptcy Court the terms of this Term Sheet and withdraw any pending objections they have filed to the Plan; (ii) not file any further objections to the Plan; (iii) support and take all actions reasonably necessary or reasonably requested by the Debtors to support incorporation of this Term Sheet into confirmation of the Plan; and (iv) not support any party in objecting to or opposing the Plan.

. . .

> For the avoidance of doubt, any defense to payment under
> the bonds and Letters of Credit existing as of the Effective
> Date will be released by the Apache Sureties.   Further,
> nothing herein will release any claims of the parties hereto
> that arise post-Effective Date, including the rights of the
> Apache Sureties and Apache under the Apache Surety
> Bonds and Letters of Credit.

Case No. 20-33948, ECF No. 1751-2 at 5–6.  The confirmation order also provides:

> Upon execution of the Apache Definitive Documents,
> including, without limitation the granting of liens to
> Apache on the FWE I and GOM Shelf LLC assets
> contemplated thereunder, the Debtors will be deemed to
> have cured all defaults existing under the
> Decommissioning Agreement as of the Effective Date (the
> "**Apache Cure**") and no third party, including, without
> limitation, the Apache Sureties, may raise any defense to
> payment under the Apache Surety Bonds or letters of
> credit, in each case constituting Decommissioning
> Security, based on the agreement reached between the
> Debtors and Apache as to the Apache Cure.

Case No. 20-33948, ECF No. 1751 at 80.

If the Sureties' lawsuit only raises claims that arose post-effective date, the suit would be consistent with the Apache-Surety Term Sheet and the confirmation order.  The lawsuit would fall under the injunction carveout's language permitting the exercise of "rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan."  Case No. 20-33948, ECF No. 1742 at 83.  On the other hand, if the lawsuit raises any claims that did not arise post-effective date, the plan injunction is triggered because those claims are not preserved under the plan and fall under the injunction's broad language

prohibiting a "suit, action, or other proceeding of any kind . . . against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or property of any of the foregoing."[8]  Case No. 20-33948, ECF No. 1742 at 82–83.

The Sureties' lawsuit raised six counts for relief.  The first count is a cause of action for tortious interference with contract.  ECF No. 1-1 at 17.  The cause of action alleges that

> Post-Effective Date, Apache knowingly and intentionally interfered with the contracts, by, without limitation: (1) causing GOM Shelf to issue default letters to BOEM and BSEE prompting BOEM and BSEE to issue decommissioning orders and incidents of noncompliance to Apache requiring that the decommissioning be performed, (2) taking actions, including, but not limited to, the acts and/or omissions described herein, to make the Sureties' performance under the contracts more burdensome, difficult and expense, (3) willfully manufacturing accelerated and greater potential losses to the Sureties, and (4) making improper draws on Trust A including, but not limited to, draws for "maintenance and monitoring" and general overhead expenses unrelated to decommissioning.

ECF No. 1-1 at 17.

The Sureties' allegations in this cause of action are similar to the ones the Sureties made in their plan objections, i.e., that soon after the effective date, Apache would improperly control FWE I, and correspondingly GOM Shelf, to manufacture a default on GOM Shelf's decommissioning obligations and permit Apache to draw on the bonds and letters of credit to funnel any remaining value out of FWE I.  The

---

[8] The plan injunction's language does not only prohibit the Sureties from raising pre-effective date defenses to payment.  The language prohibits any lawsuit that directly or indirectly affects Fieldwood, so long as the suit is not consistent with the terms of Fieldwood's plan.

confirmation order provides that "the reorganization of FWE in accordance with the Plan, including the creation of FWE I . . . , does not give Apache or any of its affiliates control over FWE I." Case No. 20-33948, ECF No. 1752 at 84. Any claim that Fieldwood's reorganization permitted Apache to exercise improper post-effective date control over GOM Shelf was released as part of the parties' settlement and would be enjoined by the plan injunction.

To be consistent with the plan injunction carveout, the Sureties must allege facts showing that Apache took post-effective date action in contravention of the terms of Fieldwood's plan to exercise improper control over GOM Shelf and force a default of GOM Shelf's decommissioning obligations. The Sureties have failed to do so. Their claims seek an inference that GOM Shelf's early default under its decommissioning obligations, resulting in Apache's draws on Trust A, implies that Apache is exercising improper control over GOM Shelf. ECF No. 1-1 at 14–15. This inference is insufficient to raise a plausible allegation of improper post-effective date conduct by Apache. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The Sureties have not alleged any facts indicating how Apache is exercising this control. The claim also presents no other facts suggesting post-effective date conduct in violation of the plan, confirmation order, or the parties' settlement. The first claim for relief is precluded by the plan injunction.

The Sureties' second cause of action seeks a declaration that Apache is not entitled to draw on the decommissioning security for "maintenance and monitoring" expenses. ECF No. 1-1 at 18–19. The cause of action alleges that "Post-Effective Date, Apache has drawn tens of millions of dollars from Trust A for 'maintenance and monitoring' expenses which are not proper withdrawals from the Trust. Nor are they proper draws on the surety bonds or letters of credit." ECF No. 1-1 at 19. Because the decommissioning agreement only permits Apache

to draw for decommissioning and not maintenance and monitoring, "Apache has wrongfully withdrawn funds from Trust A to which it is not entitled, thereby harming the Sureties." ECF No. 1-1 at 19.

The second cause of action is properly raised. It alleges a defense to draws that genuinely arose post-effective date and that was not anticipated or litigated in any prior proceeding in this bankruptcy case. If Apache truly improperly drew on Trust A for non-covered expenses, then the Sureties may be entitled to some form of relief for those improper draws. Nevertheless, because the Sureties' lawsuit contains multiple claims that violate the plan injunction, the lawsuit may not proceed; it violates the plan injunction. *See In re McKinney*, No. 21-50046-RLJ11, 2022 WL 1632156, at *4 (Bankr. N.D. Tex. Apr. 28, 2022) ("[E]ven if *some* claims in the Motions to Enter were not discharged under the Plan, that provides no protection . . . because the rest of the claims were admittedly discharged—so long as the Motions to Enter contain *any* discharged claims, they violate the Discharge Injunction.").

The substantial majority of the causes of action alleged by the Sureties are a direct attack on the plan and confirmation order. The lawsuit will not be saved by a single claim that, if proven, may entitle the Sureties to some form of relief. Whether these allegations are true (and the consequences if true) can be decided after the Sureties file a lawsuit that is not void as a violation of this Court's orders.

The Sureties' third cause of action seeks a declaration that Apache has impaired the Sureties' collateral, discharging the Sureties from their obligations to the extent of the impairment. ECF No. 1-1 at 19–20. The Sureties assert two bases for the impairment of collateral. First is that the improper "maintenance and monitoring" draws have resulted in the impairment of Trust A, which serves as "collateral security to both Apache and the Sureties." ECF No. 1-1 at 19. For the same reasons as the second cause of action, this issue may be resolved if the Sureties file a lawsuit that is not void as a violation of this Court's injunction.

The second basis for the cause of action is that

> [t]hrough its conduct and its control of GOM Shelf, Apache
> wrongfully focused the entirety of GOM Shelf operations
> toward decommissioning and has delayed or otherwise
> declined to meaningfully pursue a robust sale effort or
> capital drilling program that could have greatly increased
> revenue and cash available for decommissioning, as was
> completed to be pursued under the Apache Surety
> Settlement Documents.

ECF No. 1-1 at 19.

This second argument asserts the same factual allegations as the
first claim for relief. The Sureties seek an inference that because GOM
Shelf defaulted on its decommissioning obligations earlier than
expected, Apache took post-effective date action to control GOM Shelf
and draw all value out of the entity. For the same reasons as the first
claim for relief, the Sureties cannot raise an inference of improper post-
effective date control by Apache simply because GOM Shelf defaulted on
its decommissioning obligations. Given the paucity of any
demonstration of the validity of this leap of faith, it fails to state a
plausible claim. *See Iqbal*, 556 U.S. at 678–79. Because the third claim
for relief asserts no valid post-effective date claims, the claim for relief
is precluded by the plan injunction.

The Sureties' fourth claim for relief seeks a declaration that the
Sureties are discharged from their obligations due to Apache's material
alteration of the bonded risk. ECF No. 1-1 at 20–21. The cause of action
alleges that "Apache knowingly and intentionally caused GOM Shelf to
issue default letters to BOEM and BSEE prompting BOEM and BSEE
to issue decommissioning orders and incidents of noncompliance
requiring that the decommissioning be performed . . . in contravention
of the terms of the Decommissioning Agreement . . . ." ECF No. 1-1 at
20. They argue that Apache caused GOM Shelf to issue these letters in
order to improperly manufacture a claim under the bonds and "exhaust

those funds as quickly as possible and derive for itself the sole benefit of the producing GOM Shelf properties . . . ." ECF No. 1-1 at 20. And again, they contest Apache's alleged wrongful coercion of GOM Shelf to focus on decommissioning instead of other capital programs. ECF No. 1-1 at 20–21. The Sureties fifth and sixth claims for relief essentially repeat the same allegations. ECF No. 1-1 at 21–23. For the same reasons explained above, Apache has not validly asserted any plausible post-effective date causes of action. The fourth, fifth, and sixth claims for relief are precluded by the plan injunction.

The state court lawsuit is inconsistent with the plan, confirmation order, and parties' settlement. The lawsuit violates the plan injunction.

## C.   The Court Has Jurisdiction to Enforce the Plan Injunction

The Sureties allege that the plan injunction does not apply to the surety bonds because the bonds "are not property of the estate and the Debtors have no interest in the bonds." ECF No. 75 at 13. And because the bonds are not property of the estate, "the Court would have no jurisdiction to extend the Plan Injunction to the surety bonds." ECF No. 75 at 14.

The Sureties' cited cases held that actions were not enjoined by the automatic stay because the surety bonds at issue in those actions were not property of the debtors' bankruptcy estates. *See O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1177–78 (9th Cir. 1989); *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108, 1115 (6th Cir. 1981); *In re Petroleum Piping Contractors, Inc.*, 211 B.R. 290, 312 (Bankr. N.D. Ind. 1997); *McLean Trucking Co. v. Dep't of Indus. Rels. (In re McLean Trucking Co.)*, 74 B.R. 820, 826–29 (Bankr. W.D.N.C. 1987).

Whether the surety bonds are property of the estate has no bearing on the Court's jurisdiction to enforce the injunction contained in Fieldwood's plan. A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v.*

*Bailey*, 557 U.S. 137, 151 (2009). The plan and confirmation order also preserve the Court's jurisdiction to enforce a plan injunction. Case No. 20-33948, ECF Nos. 1742 at 93–94; 1751 at 116.

The Court has jurisdiction to void the Sureties' lawsuit for violating the plan injunction. The Sureties' motion for reconsideration is denied.

## II.   APACHE'S IS PERMITTED TO ASSERT ITS COUNTERCLAIMS

Apache requests authorization from the Court to pursue its pending counterclaims against the Sureties. ECF No. 73. It argues that its counterclaims fall under the plan injunction carveout as claims consistent with Fieldwood's plan. ECF No. 73 at 5–6. In the alternative, Apache seeks relief from the plan injunction to pursue its claims. ECF No. 73 at 6–8.

### A.   Apache's Counterclaims Fall Under the Plan Injunction Carveout

Apache's counterclaim asserts two causes of action. The first count contains claims for breach of contract, repudiation, and anticipatory breach. The cause of action is premised on the allegation that the Sureties "actions to repudiate or discharge the bond obligations underlying Apache's Decommissioning Security constitute a breach of the [Sureties'] obligations under the SSPA and breach of Philadelphia's and Everest's obligations under the bonds." ECF No. 24 at 14. It further alleges that the Sureties' state court lawsuit seeking injunctive relief preventing Apache from making draw requests on the bonds and letters of credit "constitute breaches of the [Sureties'] agreement under the SSPA that they would not 'take any action that would, or could reasonably be expected to, hinder, in any manner, any exercise' by Apache of remedies under the Letters of Credits and bonds." ECF No. 24 at 14–15. The cause of action also claims that Philadelphia and Everest breached their obligations under the bonds by failing "to make the contractually required payments even though Apache's draw

requests complied with the presentment terms and procedures of the bonds." ECF No. 24 at 15.

Apache's second claim for relief requests the following declarations:

    a. Apache has the right to make draw requests under the Philadelphia Bond for government-mandated decommissioning expenses,

    b. Apache has the right to make draw requests under the Everest Bond for government-mandated decommissioning expenses,

    c. Apache's draw request to Philadelphia on July 31, 2023 complied with the presentment terms (and other terms) of the Philadelphia Bond,

    d. Apache's draw request to Everest on July 31, 2023 complied with the presentment terms (and other terms) of the Everest Bond,

    e. Zurich and HCCI do not have rights to interfere with the Deutsche Bank Letters of Credit to which they are not a party,

    f. [The Surety Confirmation Agreement] prohibits the Sureties' efforts to prevent Apache from drawing on the Deutsche Bank Letters of Credit and the Philadelphia Bond and the Everest Bond,

    g. BSEE-ordered "maintenance and monitoring" costs incurred in accordance with BSEE's Decommissioning Orders are reimbursable expenses under the Decommissioning Agreement,

    h. The Insurance Companies waived their alleged defenses as against Apache in their respective bonds and financial instruments,

i.  Everest did not provide Apache with a notice of non-renewal within the required time period, and the Everest Bond (with a renewal date of August 30, 2023) will automatically renew and remain in full force and effect for the Subsequent Term,

j.  Philadelphia did not provide Apache with a notice of non-renewal within the required time period, and the Philadelphia Bond (with a renewal date of September 27, 2023) will automatically renew and remain in full force and effect for the Subsequent Term, and

k.  No Apache Surety has provided timely or otherwise effective notice of non-renewal, and any bond or other financial instrument issued by any Apache Surety will automatically renew and remain in full force and effect for the Subsequent Term.

ECF No. 24 at 15–17.

Apache's counterclaims are entirely consistent with Fieldwood's plan.  The claims for relief seek to enforce Apache's ability to draw on the bonds and letters of credit and prevent the Sureties from asserting any released pre-effective date defenses to Apache's draws.  These are rights granted to Apache through the Apache-Surety Term Sheet and Surety Confirmation Agreement.  Apache's rights under the decommissioning security and corresponding bonds and letters of credit are integral to post-effective date Fieldwood's operations.  The parties' settlement was incorporated into the plan and confirmation order as a central feature for resolving Fieldwood's decommissioning obligations. The terms of the settlement preserve the decommissioning security and permit Apache to make draws on the bonds and letters of credit pursuant to their terms and the terms of the decommissioning agreement.

Apache's counterclaims fall under the § 10.6 plan injunction carveout permitting claimholders to "exercise[e] their rights and

remedies, or obtain[] benefits, pursuant to and consistent with the terms of the Plan." Case No. 20-33948, ECF No. 1742 at 83. The counterclaims do not violate the plan injunction.

The Court notes that Apache's ability to pursue its counterclaims does not necessarily foreclose the Sureties' ability to defend against those counterclaims, so long as their claims fall under the injunction carveout.

### B.     Apache's Counterclaim Is Treated as Its Complaint

The parties dispute whether the Court's oral ruling voiding the state court action necessarily voids Apache's counterclaims. The Sureties argue that because the Court held the lawsuit as void, "Apache has no pending counterclaims to pursue. If Apache wishes to proceed against Everest and Philadelphia, and if the Court grants Apache relief from the Plan Injunction, then Apache will be required to file a new action." ECF No. 75 at 7. On the other hand, Apache argues that it "understood the Court's ruling to have the effect of dismissing the Sureties' Plan Injunction-violating claims without negatively affecting or resulting in the dismissal of Apache's pled-but-unpursued counterclaims." ECF No. 81 at 10. In the alternative, Apache seeks permission to pursue its counterclaims in a court of competent jurisdiction and "believes this Court is such a court." ECF No. 81 at 10.

Apache's claims may be litigated in this adversary proceeding. Apache seeks to enforce rights granted through the plan and confirmation order. The Court has jurisdiction to interpret and enforce its orders. *Travelers*, 557 U.S. at 151. The confirmation order provides the Court with exclusive jurisdiction "with all matters arising from or related to the Chapter 11 Cases, the Plan, and the implementation of this Order." Case No. 20-33948, ECF No. 1751 at 116. Section 11.1 of Fieldwood's plan also retains the Court's jurisdiction to enforce rights granted in the plan. Case No. 20-33948, ECF No. 1742 at 93–94.

Although the Court voided the state court lawsuit, this adversary proceeding remains active. Apache does not need to replead its claims.

The Court treats Apache's *First Amended Counterclaim* (ECF No. 24) as its complaint for relief filed on this date. *Cf. Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007).

### III. APACHE IS ENTITLED TO REASONABLE ATTORNEYS' FEES FOR LITIGATING THE SURETIES' STATE COURT ACTION

The Court permitted Apache to file an application for compensation for the Sureties' plan violation at the October 24 hearing. ECF No. 64 at 125. Apache moves for sanctions based on the Sureties' violation of the plan injunction. ECF No. 67.

"The Court has the power to sanction improper conduct, including violations of its orders," under § 105 of the Bankruptcy Code. *Tex. Oil Res. Operating, LLC v. ACSI Holdings, LLC (In re Anloc, LLC)*, No. 12-31267, 2021 WL 5441076, at *3 (Bankr. S.D. Tex. Nov. 18, 2021). "Section 105 is the appropriate vehicle for the Court to provide compensation for conduct that violates this Court's orders." *Id.* Under *Taggart v. Lorenzen*, "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." 587 U.S. 554, 565 (2019). *Taggart* applies broadly to orders entered in Chapter 11 proceedings, and the parties agree that *Taggart* sets the proper standard for violations of a plan injunction. *See Beckhart v. NewRez LLC*, 31 F.4th 274, 277 (4th Cir. 2022).

"Under *Taggart*, three elements must be proven for a court to hold a party in contempt: '(1) the party violated a definite and specific order of the court requiring him to . . . refrain from performing . . . particular . . . acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct.'" *In re McKinney*, 2022 WL 1632156, at *2 (quoting *In re City of Detroit, Mich.*, 614 B.R. 255, 265 (Bankr. E.D. Mich. 2020)). The standard is objective, but subjective intent is not irrelevant. *Taggart*, 587 U.S. at 561. "[A] party's subjective belief that she was

complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 561–62.

The first two elements of the *Taggart* standard are indisputably met. The Sureties violated the injunction contained in § 10.6 of Fieldwood's plan through the assertion of their waived claims in the state court action. The Sureties also do not dispute that they had knowledge of the plan injunction. Whether the Sureties should be held in civil contempt turns on whether their violation of the plan injunction was objectively unreasonable.

The majority of the Sureties' arguments that their violation of the plan injunction was not objectively unreasonable are a rehash of the same arguments they made in their motion to reconsider the oral ruling. They argue (1) the plan injunction applies only to pre-petition "Claims" against Fieldwood and their state court action is not a "Claim" as defined under the plan; (2) surety bonds are not property of the estate; and (3) their complaint alleges post-effective date claims that fall under the injunction carveout. ECF No. 69 at 12–18. These arguments have already been dispelled.

The Sureties also assert that the plan injunction could not have applied to the state court action because the Surety Confirmation Agreement specifically permitted the Sureties to pursue indemnity claims against GOM Shelf once Apache was paid in full. They argue that because "very Claims that the Sureties did assert in the bankruptcy were *specifically preserved* for the benefit of the Sureties and *pass through the Plan* by the agreement of Apache and GOM Shelf," "[t]here is no way the Plan Injunction could apply under these facts." ECF No. 69 at 18.

While it is true that claims for indemnity were preserved, the state court lawsuit is clearly not a claim for indemnity. It is a claim to prevent Apache from drawing on the bonds and letters of credit based on released pre-effective date defenses to payment. When Apache is paid in full, the Sureties have a claim against GOM Shelf to the extent

of the funded draws.  The indemnification claims against GOM Shelf are entirely distinct from the claims asserted against Apache.

The Sureties finally argue that their violation was not objectively unreasonable because Apache failed to raise the § 10.6(a)(i)[9] plan injunction violation issue until the Court raised it *sua sponte* at a hearing held on September 21, 2023.  ECF No. 69 at 18–19.  According to the Sureties, because Apache did not raise § 10.6(a)(i) throughout their litigation in state court and this Court, "Apache clearly did not believe Section 10.6 applies to the State Court action."  ECF No. 69 at 19.  By extension, because no one believed the injunction provision applied, "it was reasonable for the Sureties to conclude that the State Court action was not enjoined."  ECF No. 69 at 20.

The Court makes no implications based on Apache's litigation choices in state court.  The record reflects that during the state court proceedings, Apache was focused on litigating the Sureties' claim for a temporary injunction while preparing to remove the action to this Court and enforce the plan and confirmation order.  Apache's strategies for opposing the temporary injunction have no bearing on whether the Sureties' plan injunction violation was reasonable.  With respect to the removed action, although Apache failed to raise § 10.6(a)(i) in prior pleadings, it relied on the injunction provisions in §§ 10.6(a)(iv) and 10.6(a)(v) in its motion to enforce.  ECF No. 5 at 31.  Those provisions provide:

> Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the

---

[9] Section 10.6(a)(i) is the plan injunction provision the Court found the Sureties to have violated at the October 24 hearing and in this Memorandum Opinion.

entry of the Confirmation Order from . . . (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan . . . .

Case No. 20-33948, ECF No. 1742 at 82–83.

Although the Court does not reach this conclusion, these provisions likely provide an independent basis for finding the Sureties in violation of the plan injunction. Most importantly, the factual basis Apache asserted for the Sureties' violation of these provisions is the same the Court relied on in finding the Sureties in violation of § 10.6(a)(i)—that the state court action is an attempt by the Sureties to collaterally attack the plan, confirmation order, and the parties' settlement and to relitigate claims already decided by the Court. ECF No. 5 at 29–32.

The Sureties could not have had a fair ground of doubt whether their claims in state court were in compliance with the plan injunction, confirmation order, and the terms of the parties' settlement. They filed and heavily litigated objections to Fieldwood's plan. The arguments they asserted in those objections were settled and released. The Sureties knew that any opposition to Apache's draw requests was limited by their settlement to causes of action that arose post-effective date. They agreed to those terms. Yet, the Sureties proceeded in state court seeking to plead their same feasibility and improper control defenses through entirely unsubstantiated claims of improper post-effective date conduct by Apache. The state court action is a gross violation of the plan injunction, and the Sureties could not have had an objectively reasonable basis for concluding they were permitted to proceed with their claims.

The Sureties are held in civil contempt under *Taggart* and § 105 of the Bankruptcy Code. Compensatory attorneys' fees are an appropriate sanction for a violation of a plan injunction. *See In re Eichor*, No. 20-35221, 2022 WL 4098948, at *8 (Bankr. S.D. Tex. Sept. 7, 2022), *aff'd*, 689 F. Supp. 3d 438 (S.D. Tex. 2023).

"Once the right to attorneys' fees comes into being, Rule 54 provides the procedures for enforcing it unless the right springs from the Federal Rules of Civil Procedure or 28 U.S.C. § 1927." *Tex. Oil Res. Operating, LLC*, 2021 WL 5441076, at *3. Rule 54 applies in this case. Federal Rule of Civil Procedure 54(d) requires (1) a motion claiming attorneys' fees; (2) to be filed no later than 14 days after entry of judge or as otherwise ordered by the court; (3) that specifies the judgment and the grounds entitling the movant to the award; (4) that states the amount sought or provides a fair estimate; and (5) if the court orders, discloses "the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d).

Apache's application for compensation complies with Rule 54. The motion was filed within 21 days of the October 24 ruling as ordered by the Court, it specifies the October 24 ruling and § 105 of the Bankruptcy Code as the basis for attorneys' fees, and it provides the amount sought.

Apache is entitled to attorneys' fees for litigating the state court action. The reasonableness of the amount of fees Apache seeks is heavily contested by the Sureties. The Court will hold an evidentiary hearing on October 9, 2024, at 3:00 PM to determine the amount of fees and expenses to which Apache is entitled.

## CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED 09/12/2024

_____

Marvin Isgur
United States Bankruptcy Judge