United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 07, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-33948** |
| **FIELDWOOD ENERGY LLC,** *et* | § | |
| *al.,* | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **ZURICH AMERICAN** | § | |
| **INSURANCE COMPANY,** *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 23-3137** |
| | § | |
| **APACHE CORPORATION,** | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

On June 21, 2023, the Sureties violated an injunction contained in Fieldwood's plan of reorganization by suing Apache in state court. On September 12, 2024, the Court issued its Memorandum Opinion holding that Apache is entitled to the reasonable attorneys' fees and costs it incurred as a consequence of the Sureties' plan injunction violation. The issue before the Court is the amount of attorneys' fees and costs to which Apache is entitled.

The Sureties object to Apache's application for compensation on various grounds under the lodestar test. The Court sustains a number of the objections and overrules the remainder. Apache is awarded $2,288,991.43 in attorneys' fees. Apache is also awarded $66,356.47 in expenses.

# BACKGROUND

On June 21, 2023, Zurich American Insurance Company, HCC International Insurance Company PLC, Philadelphia Indemnity Insurance Company, and Everest Reinsurance Company (collectively, the "Sureties") sued Apache Corporation in Harris County state court in an attempt to discharge the Sureties' obligations under certain surety bonds and letters of credit issued in Apache's favor pursuant to a decommissioning agreement between Apache and Fieldwood Energy LLC.[1] Apache removed the state court lawsuit to this Court and moved to enforce an injunction contained in Fieldwood's plan of reorganization. ECF No. 5 at 29–32. This Court held that the state court lawsuit violated the plan injunction by raising claims that were released pursuant to the plan and the Court's confirmation order. ECF No. 64 at 124. The Court declared the state court lawsuit void and permitted Apache to file an application for the attorneys' fees it incurred as a consequence of the Sureties' plan violation. ECF No. 64 at 125.

Apache filed an application for compensation on November 14, 2023. ECF No. 67. The application seeks attorneys' fees in the amount of $2,187,390.60, which is comprised of $830,135.60 billed by Hunton Andrews Kurth LLP, $1,268,457.50 billed by Susman Godfrey L.L.P., and $88,797.50 billed by Bracewell LLP. ECF No. 67 at 3. The application is supported by detailed billing statements and the declarations of partners at the three firms. ECF Nos. 67-2, 67-3, 67-4. The application also seeks expenses in the amount of $65,622.26, comprised of $2,798.71 billed by Hunton Andrews Kurth and $62,823.55 billed by Susman Godfrey. ECF No. 67 at 3. The application further seeks compensation for the time expended by Apache personnel in the amount of $218,739.06, supported by the declaration of J. Austin Frost, senior counsel at Apache. ECF No. 67 at 3; 67-5. The application requests pre- and post-judgment interest. ECF No. 67 at 4.

The Sureties filed responses objecting to both Apache's entitlement to fees and expenses and the reasonableness of the amount of fees and expenses requested. ECF Nos. 68, 69.

---

[1] For further background, see the Court's Memorandum Opinion at ECF No. 91.

Apache seeks an additional $354,426.36 for fees and expenses incurred after the filing of the application. ECF Nos. 122-7, 122-8.

On September 12, 2024, the Court issued a Memorandum Opinion finding, among other things, that Apache is entitled to the reasonable attorneys' fees and costs incurred as a consequence of the Sureties' violation of the plan injunction. ECF No. 91 at 36. The Court set an evidentiary hearing to determine the amount of fees and expenses to which Apache is entitled. ECF No. 91 at 36.

On October 24, 2024, the Court held an evidentiary hearing on the dispute.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

The Sureties contest the Court's jurisdiction over the dispute in light of the Sureties' appeal of this Court's September 12, 2024 Memorandum Opinion and Order. ECF No. 124 at 2–4. The Sureties contend that the appeal of the September 12, 2024 Order is an appeal of a final judgment, divesting this Court of jurisdiction to hear any issues decided in the Order. ECF No. 124 at 2–3. Because Apache's entitlement to an award of attorneys' fees as sanctions against the Sureties is an issue on appeal, they argue that the Court is divested from jurisdiction to determine the amount of attorneys' fees to award Apache. ECF No. 124 at 3–4. The Sureties also argue that, since the Order voided the Sureties' complaint and deemed Apache's counterclaim the operative complaint, jurisdiction over the entire adversary proceeding is divested from the Court until resolution of the appeal. ECF No. 124 at 3–4.

The Court dismissed the Sureties' jurisdictional challenge at the October 24 hearing. ECF No. 138 at 6. The Court determined in its September 12, 2024 Memorandum Opinion that Apache is entitled to an award of attorneys' fees as sanctions against the Sureties. The Court did not enter an order awarding Apache attorneys' fees. The September 12, 2024 Order merely set a hearing to determine an award of fees, if any. Because the issues on appeal do not include a fee award, the Court is not divested from jurisdiction to determine a fee award. ECF No. 138 at 6–7; *see Wooten v. Roach*, 964 F.3d 395, 403 (5th Cir. 2020); *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007).

The Court is not divested of jurisdiction to determine the amount of the award of attorneys' fees.

## DISCUSSION

The Sureties contest Apache's application for compensation on various grounds. The objections center around the reasonableness of the time expended by Apache's counsel on the litigation. The Sureties' objections regarding pre-lawsuit fees, block billing, vagueness, travel, and Apache personnel are sustained in part. The remaining objections are overruled. Apache is awarded $2,288,991.43 in attorneys' fees and $66,356.47 in expenses.

## I. APACHE IS ENTITLED TO THE REASONABLE ATTORNEYS' FEES AND COSTS INCURRED FROM JUNE 21, 2023, THROUGH OCTOBER 24, 2024

Apache's application for compensation seeks attorneys' fees and costs billed by Susman Godfrey for the period prior to the filing of the Sureties' state court lawsuit. Apache also seeks fees and costs billed by Susman Godfrey and Hunton Andrews Kurth for work performed in connection with Apache's application for compensation. The Sureties argue that these fees and costs are not recoverable. Although the pre-lawsuit fees are not recoverable, the fees incurred in connection with Apache's application for compensation are recoverable. The appropriate timeline for determining the amount of fees is from the date of filing of

the state court lawsuit, or June 21, 2023, through the October 24, 2024 evidentiary hearing.

In its September 12 Memorandum Opinion, the Court found that Apache is entitled to attorneys' fees as sanctions against the Sureties pursuant to § 105 of the Bankruptcy Code and *Taggart v. Lorenzen*, 587 U.S. 544. ECF No. 91 at 32–36. These sanctions were awarded due to the Sureties' violation of the injunction contained in Fieldwood's plan of reorganization. ECF No. 91 at 32–36. The Court found that Apache is entitled to the attorneys' fees it incurred as a consequence of the plan injunction violation. ECF No. 91 at 36. The Court held that the Sureties violated the injunction contained in § 10.6(a)(i) of Fieldwood's plan, which provides:

> Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor . . . provided, that nothing contained in the Plan shall preclude such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

Case No. 20-33948, ECF No. 1742 at 82–83.

Apache argues that it should be compensated for the fees it incurred prior to the Sureties' filing of the state court lawsuit. It argues these fees were incurred due to Apache's counsel preparing for attempts by the Sureties to "delay or prevent the accrual of Apache's costs to decommission, so that the Sureties could try to avoid or defer payment on the Decommissioning Security into the distant future." ECF No. 67 at 17. Ms. Noebels testified that Apache retained Susman Godfrey in July 2022 in response to certain correspondence from the Sureties indicating they were not going to honor their obligations under the bonds and letters of credit. ECF No. 138 at 26. As a result of the correspondence, Mr. Harrison and Ms. Noebels expended time learning about the dispute and preparing responsive correspondence. ECF No. 138 at 26. The attorneys also expended time responding to pre-lawsuit document requests by the Sureties. ECF No. 138 at 26.

The § 10.6(a)(i) plan injunction prohibits suits, actions, or other proceedings against or affecting Fieldwood. Even if the Sureties were preparing to breach their obligations under the bonds and letters of credit, they could not have violated the plan injunction until they filed a suit, action, or other proceeding. The plan violation occurred when the Sureties filed their state court lawsuit on June 21, 2023. Any fees incurred by Apache prior to the state court lawsuit are not fees incurred as a consequence of the plan injunction violation. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).

Apache seeks $58,287.50 in fees and $5,429.88 in costs billed by Susman Godfrey for the period prior to the Sureties' state court petition. ECF No. 122-3 at 12–28. These fees and costs are not recoverable.

Although § 330(a) of the Bankruptcy Code does not authorize an award of fees incurred in defense of a fee application, the limitation does not apply when awarding fees as sanctions under § 105 of the Bankruptcy Code. *See In re Rodriguez*, 517 B.R. 724, 736 (Bankr. S.D. Tex. 2014) (citing *In re ASARCO, L.L.C.*, 751 F.3d 291, 299 (5th Cir. 2014)). Because Apache's fee award is an equitable remedy under § 105, Apache may be compensated for the fees incurred in defense of its fee application. *See id.*

Subject to the adjustments set forth below, Apache may be awarded fees sought in its application for the period following June 21, 2023.

## II.   THE COURT AWARDS APACHE'S EXPENSES

The Court has discretion to award expenses under Bankruptcy Rule 7054(b). *Tex. Oil Res. Operating v. ACSI Holdings, LLC (In re Anloc, LLC)*, No. 12-31267, 2021 WL 5441076, at *3 (Bankr. S.D. Tex. Nov. 18, 2021) (citing *In re Clansy*, No. 04-40504, 2008 WL 177779, at *3 (Bankr. S.D. Tex. Jan. 18, 2008)). "The Court may consider factors such as bad faith by the prevailing party in incurring unnecessary expenses and the inability . . . to afford the expenses of the prevailing party." *Id.*

The Sureties do not argue that Apache is not entitled to an award of expenses in the event the Court sanctions them for violating Fieldwood's plan. Rather, the Sureties argue for a reduction of the claimed expenses under the lodestar test. There is no evidence to suggest the Sureties are unable to pay the expenses.

Subject to the adjustments set forth below, the Court awards a portion of Apache's expenses.

## III.   ADJUSTMENTS IN THE REQUESTED FEES AND EXPENSES

"The Court may calculate reasonable attorneys' fees with the lodestar method, in which the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Anloc*, 2021 WL 5441076, at *3 (citing *Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021)). "The lodestar amount is presumed reasonable, but the Court may apply an upward or downward multiplier from the lodestar amount by applying the *Johnson* factors." *Id.* (citing *Hobbs*, 7 F.4th at 259).

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hourly rates and hours expended." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

A.    **Appropriate Hourly Rates**

Reasonable hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum*, 465 U.S. at 896 n.11).

> When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable. When the requested rate of compensation exceeds the attorney's usual charge but remains within the customary range in the community, the district court should consider whether the requested rate is reasonable.

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) (quoting *Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)).

The Sureties do not contest the hourly rates charged by Apache's counsel. The rates are supported by affidavits and testimony, which reflect that the rates are commensurate with rates charged in the community.

The declarations of Abigail C. Noebels, a partner at Susman Godfrey and counsel to Apache, provide the rates charged by the firm's attorneys that worked on the matter:

| Timekeeper | Hourly Rate |
|---|---|
| Geoffrey L. Harrison | $1,500 (2023); $1,750 (2024) |
| Abigail C. Noebels | $800 (2023); $850 (2024) |
| Nicholas N. Spear | $800 (2023); $850 (2024) |
| Winston Luo | $600 (2023) |

| | |
|---|---|
| Adam Garzoli | $600 (2023); $725 (2024) |
| Sarah Hannigan | $725 (2024) |
| Jeffrey W. McLaren (Paralegal) | $400 (2023, 2024) |
| Stacy S. Schulze (Paralegal) | $400 (2023, 2024) |
| Erich Remiker (Summer Associate) | $125 (2023) |

ECF Nos. 122-3 at 2–5; ECF 122-7 at 2–3.

  Ms. Noebels's declarations explain that the rates charged by Susman Godfrey fall within the rates customarily charged in the Southern District of Texas, including in complex bankruptcy cases and commercial litigation.  ECF No. 122-3 at 8–9; 122-7 at 4.  Ms. Noebels's declaration also provides a table of fee awards in similar cases, which reflects that the firm's rates fall within the range of similar awards. ECF No. 122-3 at 9.  Ms. Noebels testified that the hourly rates charged by the Susman Godfrey attorneys are the same rates charged across all matters.  ECF No. 138 at 21.  The Court finds that Susman Godfrey's rates are commensurate with the reasonable rates charged in the Southern District of Texas.

  The declarations of Robin Russell, a partner at Hunton Andrews Kurth and counsel to Apache, provide similar descriptions about the hourly rates charged by the firm's attorneys:[2]

| Timekeeper | Hourly Rate |
|---|---|
| Robin Russell | $1,085, $1,275 (2023); $1,375 (2024) |
| Michael O'Leary | $1,460, $1,705 (2023) |
| Justice Scott Brister | $1,165, $1,425 (2023) |
| Tammy Brennig | $1,045, $1,275 (2023) |
| Joseph Buoni | $775, $1,055 (2023) |
| Kaylan Dunn | $765, $1,010 (2023) |
| Ashley Harper | $650, $935 (2023); $950 (2024) |
| Michael Morfey | $1,375 (2024) |
| Katy Boatman | $715, $925 (2023) |

---

[2] Ms. Russell testified that the months of June, July, and August of 2023 were inadvertently billed to and paid by Apache at a discounted hourly rate.  ECF No. 138 at 64–65.

| | |
|---|---|
| Brandon Bell | $490, $615 (2023); $700 (2024) |
| Zachary Monty | $460, $645 (2023) |
| Dana Drake (Paralegal) | $390 (2024) |

ECF Nos. 122-2 at 7; 122-8 at 3.

Ms. Russell's declarations and testimony explain that the rates charged by Hunton Andrews Kurth fall within the customary rates charged in the Southern District of Texas. ECF Nos. 122-2 at 2–3; 122-8 at 3; 138 at 65–66. Ms. Russell's declaration also provides that the rates are consistent with those awarded by the Court in similar cases. ECF No. 122-2 at 3. The Court finds that Hunton Andrews Kurth's hourly rates are commensurate with the reasonable rates charged in the Southern District of Texas.

Stephen B. Crain is a partner at Bracewell and counsel to Apache. Although his declaration does not provide a description of the hourly rates charged by firm attorneys, the rates are provided by the firm's detailed billing statements:

| Timekeeper | Hourly Rate |
|---|---|
| Stephen B. Crain | $925 (2023) |
| Mark E. Dendinger | $1,100 (2023) |
| Bob Grattan | $765 (2023) |
| Warren W. Harris | $925 (2023) |
| Jonathan Lozano | $950 (2023) |
| Jeffrey L. Oldham | $860 (2023) |
| Josh Windsor | $810 (2023) |

ECF No. 122-4 at 8.

Mr. Crain's declaration provides that he is familiar with the rates customarily charged in the Southern District of Texas and the rates charged by Bracewell fall within those customary rates. ECF No. 122-4 at 2. The Sureties do not contest Bracewell's rates. The Court finds that Bracewell's rates are commensurate with the reasonable rates charged in the Southern District of Texas.

### B.     Hours Reasonably Spent

The party seeking payment of fees has the burden to show that the hours requested are reasonable and relate to the work and time listed in the fee statements. *Anloc*, 2021 WL 5441076, at \*5. The Court considers whether any of the requested fees are block billed, vague, or excessive, and whether counsel exercised billing judgment. *Id.*; *see also Hensley*, 461 U.S. at 437.

### *(1)     Apache Did Not Fail to Mitigate*

The Sureties argue that Apache should not be compensated for the time spent defending the state court lawsuit when it could have immediately filed a one-page notice of removal to stop the state court proceedings while it worked on a motion to enforce Fieldwood's plan. ECF No. 69 at 20–23. The Sureties essentially contend that, if Apache's goal was to put a stop to the state court lawsuit, it could have immediately removed the case instead of waiting twenty-three days until the conclusion of the state court temporary injunction hearing. ECF No. 69 at 22. Accordingly, the Sureties argue that Apache should not be compensated for fees incurred as a result of an unnecessary tactical decision when it could have achieved the same result more efficiently by removing the case at its commencement. ECF No. 69 at 22–23.

The Sureties rely on *Thomas v. Capital Sec. Services, Inc.*, which held that a party seeking fees and costs under Federal Rule of Civil Procedure 11 has a duty to mitigate those expenses. 836 F.2d 866, 879 (5th Cir. 1988). The *Thomas* court explained that, when awarding fees, courts should consider whether the fee applicant "caused the litigation to be longer than necessary." *Id.* (citing *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1439 (7th Cir. 1987), *abrogated by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989)). If a litigant fails to mitigate, "the district court may exercise its discretion and either reduce the award accordingly, or in some instances, decline to award any expenses." *Id.*

*Thomas* binds his Court. A fee applicant should not be awarded fees for unnecessary time expended. But the Sureties have failed to

demonstrate that Apache's choice of litigating the state court lawsuit was unnecessary.

Ms. Noebels testified that when the Sureties filed their state court lawsuit, Apache was not initially aware that the plan injunction precluded the suit. ECF No. 138 at 27. Ms. Noebels testified that the state court lawsuit was brought by the Sureties on an expedited basis, with the Sureties seeking a hearing on their request for a temporary restraining order the day after filing their petition. ECF No. 138 at 27. Apache cannot be faulted for determining that immediate litigation of the temporary restraining order was necessary to protect its rights against the Sureties. Apache then entered into a Rule 11 agreement with the Sureties to preserve the status quo until the hearing on the Sureties' request for a temporary injunction. ECF No. 123-2 at 2–3. Ms. Noebels testified that it became apparent during the three-day evidentiary hearing on the temporary injunction that the Sureties were raising claims released through Fieldwood's plan. ECF No. 138 at 27. At this point, Apache began preparing a notice of removal. Apache anticipated that the Sureties would contest the removal, so instead of preparing a one-page boilerplate notice, it drafted an extensive notice to outline the background of the case and set forth a detailed grounds for removal. ECF Nos. 123-15 at 6; 138 at 29. Apache's predictions were correct, as the Sureties filed an extensive motion to remand contesting the removal of the suit. ECF No. 27.

In hindsight, it may be true that Apache could have halted the state court proceedings, and prevented incurring additional fees, by immediately removing the case to this Court. But faced with expedited proceedings by the Sureties that threatened Apache's approximately $500,000,000.00 in rights, the Court cannot conclude that Apache made an erroneous decision to litigate in state court. Most importantly, the fees incurred by Apache were driven by the Sureties' aggressive conduct against them. Apache was on the defensive, *with one-half of a billion dollars at risk*. Pulling out all stops in response to the Sureties offending conduct was both reasonable and necessary under the circumstances.

Apache did not fail to mitigate its expenses in state court. The attorneys' fees and expenses incurred during the state court proceedings will not be reduced on this basis.

### (2)   Block Billing

The Sureties seek a reduction in fees due to block billing. ECF No. 69 at 27. "An award of attorneys' fees may be reduced if the attorneys' documentation of hours is inadequate." *Anloc*, 2021 WL 5441076, at *5 (citing *Hensley*, 461 U.S. at 433). "Block-billed time entries describe multiple activities in one time entry or record time by the day instead of the specific task." *Id.* Although block-billed entries may not offer sufficient evidence of the reasonableness of the time expended, reduction is not automatic. *Id.* "[B]efore reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended." *Id.* (quoting *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2011)).

"The reduction for a fee request that is supported by vague or block-billed time entries should be commensurate with the egregiousness of the inadequacy in documentation." *Id.* at *6; *see also Gurule v. Land Guardian, Inc.*, No. 4:15-CV-03487, 2017 WL 6761821, at *4 (S.D. Tex. Oct. 24, 2017) ("When attorneys' time records are block billed, a common remedy is for district courts to reduce the lodestar by 10 to 30 percent."), *aff'd*, 912 F.3d 252 (5th Cir. 2018); *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4–6 (N.D. Tex. Dec. 20, 2005) (20% reduction for extensive block billing and 10% reduction for minor block billing), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007); *Fralick*, 2011 WL 487754, at *6 ("Given that some challenged entries are not block billed and that the block-billed entries have fewer tasks per day or shorter time increments per entry than some of the more egregious examples of block billing found in various cases, the court concludes that a 10% deduction is sufficient.").

Fee statements from all three firms contain extensive block-billed entries. The majority of these block-billed entries nevertheless enable the Court to determine the reasonableness of the time expended. The entries generally contain related tasks and range under five hours of time expended. For example, Ms. Noebels billed 3.00 hours for "[c]onferring with trial team re amended counterclaims. Reviewing and revising same. Reviewing trial team edits to amended counterclaims. Reviewing correspondence from client re bankruptcy issues." ECF No. 122-3 at 70. Although this entry lumps tasks, the relationship between the tasks is sufficient to enable the Court to determine that the time expended is reasonable.

Some entries contain unrelated tasks. For example, Ms. Russell billed 3.80 hours for "[r]eview extensive memo from B. Bell on recovery of damages for violation of plan injunction including [redacted] and provide feedback; meet with Bell and A. Harper; Review latest draw requests; Review SG task list: prepare for and participate in weekly status call with client and Susman." ECF No. 122-8 at 11. Mr. Lozano billed 4.90 hours for "[c]ontinue research re [redacted] issues, review of state court documents from M. Dendinger and correspondence with R. Grattan re research; research bankruptcy settlement/plan issues." ECF No. 122-4 at 6. Other examples exist across the firms' billing statements. The Court is unable to determine from the entries how much time was expended on each unrelated task.

A number of entries from the three firms contain blocks covering an entire day's work. For example, Mr. Harrison billed 12.20 hours for

> [c]onferring by phone with D. Grzyb and conferring by email with same. Reviewing and revising revised version of reply in support of application for compensation. Reviewing file. Reviewing documents. Researching points of law re application for compensation and preparing for oral argument re same. Preparing for hearing and oral argument on other subject matter. Conferring with N. Spear and A. Garzoli re hearing preparation. Conferring with team re same. Conferring by email re exhibit stipulation and filing of revised and redacted declarations.

> [S]tipulation and filing of revised and redacted
> declarations.

ECF No. 122-7 at 44–45. The Court cannot determine whether the
amount of time spent on each task is reasonable. Similar examples exist
for both Hunton Andrews Kurth and Bracewell. ECF Nos. 122-4 at 7;
122-8 at 33.

Susman Godfrey's, Hunton Andrews Kurth's, and Bracewell's
block-billed entries are each reduced by 15% due to the extensive nature
of the block billing. This penalty aligns with deductions in similar cases.
A total $169,779.68 is disallowed due to block billing, allocated as
follows: $139,932.38 billed by Susman Godfrey, $18,997.35 billed by
Hunton Andrews Kurth, and $10,849.95 billed by Bracewell.

### (3)   *Vague Entries*

The Sureties seek a reduction of fees due to vague entries. ECF
No. 69 at 28. "Vague entries are those that cannot be 'meaningful[ly]
review[ed].'" *Anloc*, 2021 WL 5441076, at *7 (quoting *La. Power & Light
Co.*, 50 F.3d at 326). "A vague entry imprecisely explains what was done,
thereby preventing the Court from determining whether the time was
reasonably expended." *Id.* A court may adjust vague entries but should
disallow them "only if they were so vague or unilluminating that the
court could not meaningfully review whether the particular hours were
reasonably expended." *Id.*

The entries identified by the Sureties are not vague. For example,
multiple Susman Godfrey entries ranging from 6.20 hours to 17.20
hours state "[p]reparing for temporary injunction hearing." ECF No.
122-3 at 51–53. Although the entry lacks detail, the Court is able to
determine the task associated with the time expended. The other
Susman Godfrey entries identified by the Sureties contain the same
limited descriptions, but the Court is nevertheless able to meaningfully
review the entries. Hunton Andrews Kurth also has entries lacking
detail, such as 0.20 hours for "[a]nalyze strategic considerations" and
2.60 hours for "[f]urther work and emails related to counterclaims."
ECF No. 122-2 at 27, 36. Similarly, the Sureties have identified a single
Bracewell 0.50-hour entry for "[c]all with client." ECF No. 122-4 at 4.

Although the entries lack specificity, the time expended is within a reasonable range for completion of these tasks.  The time entries are reasonable.

The Sureties have identified two Hunton Andrews Kurth expenses lacking detail.  The first is $1,292.56 for out-of-town travel and the second is $46.65 for meals.  ECF No. 122-2 at 30.  The first expense cannot be meaningfully reviewed.  The entry does not identify the expenses associated with the travel.

The $1,292.56 Hunton Andrews Kurth out-of-town travel expense is reduced by 1/3.  $430.85 is disallowed for the expense.  The remaining entries are allowed in full.

### (4)    *Excessive Entries*

The Sureties identify two categories of excessiveness.  The first category is general excessive fees and expenses incurred throughout the litigation.  ECF No. 123-11 at 2.  The second category is fees associated with Apache's notice of removal.  ECF No. 123-12 at 2–3.  With respect to the second category, the Sureties argue that Apache's counsel spent approximately sixty hours preparing Apache's notice of removal, irrespective of research for the notice, which is "incredibly excessive and should be reduced to a reasonable fee."  ECF No. 69 at 29.

"Fees for 'duplicative, excessive, or inadequately documented work' may be reduced or disallowed."  *In re Mata*, No. 16-33808, 2020 WL 6370347, at *8 (Bankr. S.D. Tex. Oct. 29, 2020) (quoting *In re Cole*, No. 18-35182, 2020 WL 4577236, at *10 (Bankr. S.D. Tex. July 20, 2020)).  "Work is excessive when, compared to similar work, the amount billed for the work is inexplicably high."  *Id.*

The identified general entries are not excessive.  The most extensive entry is from Mr. Spear of Susman Godfrey, who billed 18.10 hours for "[e]diting opposition to motion for injunctive relief."  ECF No. 122-3.  Considering the critical nature of the Sureties' request for injunctive relief with respect to Apache's position on its ability to draw upon the surety bonds and letters of credit, the Court cannot conclude that Mr. Spear's attention to the forty-three-page opposition was

unreasonable.  ECF No. 1-22.  The remaining entries similarly do not exhibit excessiveness.

The single identified expense is Ms. Noebels's "[p]urchase of book for research on [temporary injunction]" for $173.15.  ECF No. 122-3 at 39.  A $173.15 purchase of a book is not excessive.

Likewise, the approximately sixty hours spent preparing the notice of removal is not excessive.  Apache cannot be faulted for preparing a detailed notice of removal.  Ms. Noebels testified that Apache's attorneys determined that a detailed notice of removal was necessary in light of the Sureties' expected motion to remand the case, which required contribution from the entire Susman Godfrey team assigned to the matter.  ECF No. 138 at 29.  The notice provides a comprehensive background of the complicated facts surrounding Fieldwood's bankruptcy, Apache's contractual relationships with Fieldwood and the Sureties, and the Sureties' state court lawsuit.  ECF No. 123-15 at 8–16.  The notice also states detailed grounds for removing the suit, including the Court's jurisdiction to hear the suit and a statement that all procedural requirements for removal had been met.  ECF No. 123-15 at 16–21.  Apache's counsel also expended time preparing an index of forty-nine state court documents to be included in the notice.  ECF Nos. 122-2 at 27; 123-15 at 23–26.

The notice itself and testimony regarding the removal are sufficient to establish that the time spent preparing the notice was not excessive.  The fee application will not be reduced due to excessiveness.

### (5)   *Travel*

The Sureties seek to disallow or reduce the fees and expenses relating to the travel of two Susman Godfrey out-of-state attorneys, Nicholas Spear and Winston Luo.  ECF No. 69 at 29.  The Sureties argue that the fees and expenses should be disallowed because Apache chose to use out-of-state litigators rather than local attorneys.  ECF No. 69 at 29–30.  In the alternative, the Sureties argue the fees for travel time should be reduced.  ECF No. 69 at 30.

The Sureties provide no support for their position that Apache should not be compensated for using out-of-state attorneys. Applications by out-of-state attorneys to appear *pro hac vice* are routinely granted as a matter of right. *See In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975). The Sureties themselves have retained out-of-state attorneys. ECF No. 69 at 36–37. The Court will not disallow the fees of Apache's out-of-state counsel simply because other attorneys are available in Houston.

Although the travel fees are not disallowed, they may be reduced. The Fifth Circuit has recognized that there is not a consensus regarding the billing of travel time. *Rodriguez*, 517 B.R. at 734–35. "The only principle that is eminently clear is that courts have broad discretion in awarding fees. Indeed, courts have taken varying approaches regarding time billed for travel." *Id.* at 735 (citation omitted) (collecting authorities). "Several courts have held that discounting travel time is especially appropriate in the fee-shifting context." *Id.* This Court has previously found that billing travel time at a 50% rate reduction is reasonable. *Id.* ("The Court does not find it reasonable to bill at the full hourly rate for unproductive travel time. Even if an attorney is working while traveling, his or her productivity is likely not comparable to work done under ordinary circumstances.").

Ms. Noebels testified that Mr. Spear and Mr. Luo would generally work during travel. ECF No. 138 at 43. Mr. Spear's and Mr. Luo's time entries also reflect work during travel. ECF Nos. 122-3 at 49–50, 55, 99; 122-7 at 44. It is unclear based on the entries the time spent traveling and the time spent working. Because there appears to be billing for both travel time and legal work that may have occurred simultaneously, the Court simply cannot determine what was reasonable. The burden of proof is on Apache. The Court only allows travel at 50% of each attorney's rate. A total of $17,930.00 in fees is disallowed from the $35,860.00 billed by Susman Godfrey for travel.

The Court also finds that a portion of the travel expenses identified by the Sureties are unreasonable. The billings for Mr. Harrison's meals will be deducted. He lives and offices in Houston.

There is no indication that the meals were "working" dinners.  But, the meals for the traveling attorneys appear reasonable:

- Geoffrey L. Harrison: 7/5/2023 Dinner with W. Luo and N. Spear ($298.98).  This will be reduced by 1/3.

- Geoffrey L. Harrison: 7/12/2023 Dinner with A. Noebels, N. Spear, and W. Lou ($304.39).  This will be reduced by 1/3.

- Geoffrey L Harrison: 10/24/2023 Lunch with A. Noebels, N. Spear, J. McLaren, and A. Garzoli ($96.89).  This will be reduced by 1/3.

ECF No. 122-3 at 38, 42, 106.

Susman Godfrey's travel expenses are reduced by $233.42.  A total of $18,163.42 is disallowed for the travel of Susman Godfrey's out-of-state attorneys.

### (6)    Key Apache Personnel

The Sureties contest the fees sought by Apache for the time expended by "key Apache personnel."  ECF No. 69 at 23–25.

Apache seeks $218,739.06 as the reasonable compensation for the time expended by its "key" personnel.  ECF No. 67 at 3.  The request is supported by the declaration of J. Austin Frost, senior counsel at Apache.  ECF No. 83-4.  The declaration is wholly insufficient.  It merely provides that "I have been involved in the dispute with the Sureties since the state court lawsuit was filed in June of 2023, and I, and the other Apache personnel identified in the Application, have expended significant time in connection with the Sureties' state court lawsuit." ECF No. 83-4 at 3.  The declaration does not provide any evidence of the amount of time expended by the personnel in connection with the litigation, the hourly rates of the personnel, and whether the time spent reflects lost time that could have been expended on other matters.  *See Schermerhorn v. CenturyTel, Inc. (In re Skyport Glob. Commc'ns, Inc.)*, 528 B.R. 297, 337–38 (S.D. Tex. 2015) (affirming award of compensation for employee time calculated based on amount of time expended and the reasonable hourly rate for the services, subject to adjustments).

Apache's request for $218,739.06 in compensation for its personnel is denied.

### (7)   Johnson Factors

"After completing the lodestar analysis, the Court examines whether the *Johnson* factors warrant an upward or downward multiplier." *Anloc*, 2021 WL 5441076, at *10.  The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  The lodestar method is presumed to account for the second, third, eighth, and ninth *Johnson* factors.  *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 659 (5th Cir. 2012).

Apache does not request an upward adjustment in its application. ECF No. 67 at 17–21.  Neither do the Sureties seek a downward adjustment.   ECF No. 69 at 25–33.   The Sureties only set forth arguments based on the reasonableness of the hours expended under the lodestar test.  The Court finds that Apache is fully compensated through the lodestar amount.  *See In re Garza*, No. 16-70444, 2020 WL 718444, at *5 (Bankr. S.D. Tex. Feb. 12, 2020) ("The Court begins by noting the strong presumption of the reasonableness of the lodestar amount, and the fact that Applicants must demonstrate a necessary adjustment to calculate a reasonable fee.").

Apache is awarded $2,355,347.90 in attorneys' fees and expenses.

## IV.   APACHE IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST

Apache seeks pre- and post-judgment interest on its award of attorneys' fees.  ECF No. 67 at 22.  The Court has discretion to award pre-judgment interest whenever a certain sum is involved.  *Allstate Ins.*

*Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015). Post-judgment interest accrues on awards of attorneys' fees and costs. *In re Hanna*, 603 B.R. 571, 600 (Bankr. S.D. Tex. 2019).

The Sureties' state court lawsuit was an attempted end-run around Fieldwood's plan injunction. Apache suffered losses as a direct consequence of the Sureties' claims. An award of pre-judgment interest would better compensate Apache for the losses it suffered as a consequence of the plan violation. Apache is awarded pre-judgment interest from the date that Apache paid Bracewell's invoice dated August 8, 2023.[3] ECF No. 122-4 at 4. Post-judgment interest accrues from the date of the award.

Apache is entitled to pre- and post-judgment interest at a rate of 4.28% per annum.

## CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED 11/07/2024

Marvin Isgur
United States Bankruptcy Judge

---

[3] The Court calculated the date of accrual of pre-judgment interest by deducting the total $252,091.33 fee and cost reduction chronologically from the date of the first invoice. For example, the $252,091.33 was first deducted from Susman Godfrey's invoice dated November 22, 2022 (ECF No. 122-3 at 12), with continued chronological deductions of invoices until an invoice balance remained. The invoice with a remaining balance following the deductions is Bracewell's invoice dated August 8, 2023. ECF No. 122-4 at 4. Pre-judgment interest on the entire $2,355,347.90 award accrues from the date Apache paid this invoice. Although this somewhat understates the accurate amount of interest, the burden of proof was on Apache to demonstrate the correct starting date for the accrual of interest. The "date" ambiguity is resolved in favor of the Sureties.